Ronald STEWART; David Kirchoff; Darrell L. Howard; Louis Kubitschek; John Tuckness and Ronald Keltner, On Behalf of Themselves and Other Persons Similarly Situated, Plaintiffs–Appellants,

v.

KHD DEUTZ OF AMERICA, CORPORATION, Defendant–Appellee.

No. 92–8034.

United States Court of Appeals, Eleventh Circuit.

Jan. 5, 1993.

---

Jolley, Walsh & Hager, Kansas City, Mo., James T. Langford, Jacobs & Langford, Atlanta, Ga., Jeremiah A. Collins, and Roger L. Pollak, Bredhoff & Kaiser, Washington, D.C., for plaintiffs-appellants.

Dan T. Carter, Smith, Currie & Hancock, Atlanta, Ga., Julia S. Mandala, Howard Shapiro, and Steven Russell Cupp, McCalla, Thompson, Pyburn & Ridley, New Orleans, La., for defendant-appellee.

Before KRAVITCH, Circuit Judge, GODBOLD and OAKES *, Senior Circuit Judges.

GODBOLD, Senior Circuit Judge:

Appellants are retired employees of defendant KHD Deutz of America Corp.

---

* Honorable James L. Oakes, Senior U.S. Circuit Judge for the Second Circuit, sitting by designa- tion.

They appeal from the district court's denial of their motion for a preliminary injunction to prevent KHD Deutz from modifying their health insurance benefits. The trial court concluded that the retirees were not entitled to a preliminary injunction because the language of the collective bargaining agreement (CBA) between their union and KHD Deutz unambiguously established KHD Deutz's right to modify their health benefits, thus preventing the retirees from demonstrating a substantial likelihood of success on the merits of their claim. We reverse and remand.

## I. Factual Background

From May 26, 1985 to June 21, 1990 KHD Deutz owned the plant where the appellants worked. KHD Deutz adopted the 1984 CBA between Local 1958 of the United Steelworkers of America and the prior employer. A health benefit agreement was attached to and incorporated by the 1984 CBA. In 1986 KHD Deutz and the Union negotiated a new CBA that also incorporated a health benefit agreement identical in all relevant respects to the 1984 agreement. The 1986 CBA expired on May 19, 1989, but was extended through May 1990 without any relevant changes. After it sold the plant in June 1990, KHD Deutz retained responsibility for the health benefits of employees who retired between May 25, 1985 and January 1, 1990.

All the appellants are employees who retired between May 26, 1985 and December 31, 1989. By letter dated March 21, 1991 KHD Deutz informed the retirees that effective June 1, 1991 it would modify their coverage, including a reduction in maximum benefits, an increase in deductibles, and the introduction of a monthly premium. The plaintiffs, alleging that KHD Deutz did not have the right to modify their health benefits under the 1984 and 1986 agreements, brought suit under § 301 of the Labor–Management Relations Act (LMRA), 29 U.S.C. § 185(a) (1988), and § 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132, for declaratory, injunctive, and monetary relief. They also alleged that KHD Deutz is equitably estopped from reducing their benefits, and they sought to be certified as a class representing all those who retired between May 24, 1985 and January 1, 1990 under the terms of the 1984 or 1986 agreements.

The retirees based their claim on the extended coverage clause of the 1984 and 1986 health benefit agreements which provides:

### Extended Coverage

Extended coverage for employees and for employees with dependents shall be provided at the following levels with monthly partial premium payments of $5.00 for employee-only coverage and $10.00 for employee/dependent coverage. Provided, however, the employees who are on disability leave of absence or retired under the provisions of the retirement plan and are receiving extended coverage will not be required to make the foregoing partial premium payments.

| | Continuous coverage of less than 2 years | Continuous coverage of 2 to 7 years | Continuous coverage of 7 to 10 years | Continuous coverage of 10 years and over |
|---|---|---|---|---|
| Terminated | None | None | None | None |
| Laid Off | End of next month | 6 months | 9 months | 12 months |
| Retired | None | None | None | During Retirement |
| Disability Leave of Absence | 6 months | 12 months | 18 months | 24 months |

The language in the extended coverage clause of the 1984 and 1986 agreements was identical in all relevant respects. The retirees argued that the language "Extended coverage ... shall be provided at the following levels" followed by, in the line styled "Retired," the phrase "During Retirement" required KHD Deutz to provide health benefits throughout their retirement. KHD Deutz argued that the following language from the health benefit agreements' duration clause gave it the right to modify the retirees' benefits:

> Upon the expiration or termination of this Agreement, the Company shall have the right to continue the Plans covered herein or to amend, modify, suspend or discontinue the Plans.

The relevant language of the duration clause in the 1984 and 1986 agreements is identical. The parties offered alternative explanations of the relationship between the extended coverage clause and the duration clause. The retirees contended that the phrase "During Retirement" was meant to be unqualified and that the duration clause should be interpreted to give KHD Deutz the right only to modify active employees' benefits. KHD Deutz urged that the duration clause was meant to be unqualified and that the extended coverage clause should be construed as giving retirees the *right* to health benefits only while they were retired *and* only until expiration of the CBA. The contract did not address the relationship between the clauses, and both parties submitted extrinsic evidence supporting their respective interpretations.[1]

The court denied plaintiffs' motion for a preliminary injunction to prevent KHD Deutz from modifying their benefits. It concluded that the 1984 and 1986 agreements unambiguously established KHD Deutz's right to modify retirees' health benefits and thus refused to consider extrinsic evidence of the parties' intent. That conclusion also prevented the plaintiffs from demonstrating the first factor necessary for injunctive relief: a substantial likelihood of success on the merits. *See U.S. v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983). Accordingly, the trial court did not address the other factors. The retirees appealed from the denial pursuant to 28 U.S.C. § 1292(a)(1) (1988),[2] contending that the 1984 and 1986 agreements are ambiguous, that the trial court should have considered extrinsic evidence, and thus that the trial court's denial of their motion for a preliminary injunction should be reversed and remanded. We agree.

## II. Discussion

### A. *Standard of Review*

■ We review the denial of a preliminary injunction for abuse of discretion. *Tally–Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989). The court's application of law, however, is not entitled to deference. *Id.* Henry J. Friendly, Indiscretion about Discretion, 31 Emory L.J. 747, 773–78 (1982). Because the issue whether a contract is ambiguous is a question of law, *International Bhd. of Boilermakers v. Local Lodge D111*, 858 F.2d 1559, 1561 (11th Cir. 1988), *cert. denied*, 490 U.S. 1047, 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989), the court's conclusions that the 1984 and 1986 agreements were unambiguous and that it

---

**1.** KHD Deutz contends that the court should consider the Summary Plan Descriptions (SPDs) as part of the contract. Although ERISA requires employers to prepare SPDs, *see* 29 U.S.C. § 1022 (1988), and in some situations employers and employees may be bound by language in an SPD, *see Alday v. Container Corp. of America*, 906 F.2d 660, 666 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991), the SPDs are prepared unilaterally by the employer and are not included in the CBA. They are merely extrinsic evidence. *See*

*Bower v. Bunker Hill Co.*, 725 F.2d 1221, 1224 (9th Cir.1984).

**2.** To review the denial of the preliminary injunction it is not necessary to examine the merits of the case. Therefore we do not address KHD Deutz's arguments that it is entitled to judgment on the merits. *See Cable Holdings of Battlefield, Inc. v. Cooke*, 764 F.2d 1466, 1472 (11th Cir.1985) (citing *Gould v. Control Laser Corp.*, 650 F.2d 617, 621 n. 7 (5th Cir. Unit B July 1981)).

should not consider extrinsic evidence of the parties' intent are reviewed de novo.

### B. *Applicable Law*

■ Federal substantive law governs the interpretation and enforcement of contracts covered by § 301(a) of the LMRA, 29 U.S.C. § 185(a) (1988). *D.E.W., Inc. v. Local 93*, 957 F.2d 196, 199 (5th Cir.1992) (*citing Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957)). Federal courts apply "traditional rules for contractual interpretation ... as long as their application is consistent with federal labor policy." *International Union, UAW v. Yard–Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984); *see also United Paperworkers Int'l Union v. Champion Int'l Corp.*, 908 F.2d 1252 (5th Cir.1990); *Anderson v. Alpha Portland Industries, Inc.*, 836 F.2d 1512, 1517 (8th Cir.1988), *cert. denied*, 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989). Because federal labor policy neither favors nor disfavors the vesting of retirees' health benefits, *United Paperworkers*, 908 F.2d at 1256; *Anderson*, 836 F.2d at 1517, we apply traditional rules of contractual interpretation.

### C. *Ambiguity and Extrinsic Evidence*

■ Under the decisions of this court and the laws of Georgia, extrinsic evidence is not admissible to contradict the terms of an unambiguous contract. *Peterson v. Lexington Ins. Co.*, 753 F.2d 1016, 1018 (11th Cir.1985) (applying Georgia law); *see also* Ga.Code Ann. § 24–6–1 (Michie 1982). Moreover, it is not even admissible to establish ambiguity; any ambiguities must be created by the language of the contract itself. *Orkin Exterminating Co. v. FTC*,

849 F.2d 1354, 1362–63 (11th Cir.1988), *cert. denied*, 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989); *Southern Stone Co. v. Singer*, 665 F.2d 698 (5th Cir. Unit B 1982). Once it is established that the contract is ambiguous, however, extrinsic evidence is admissible to explain that ambiguity. *See Orkin Exterminating Co.*, 849 F.2d at 1362; Ga.Code Ann. § 24–6–3(b) (Michie 1982). A contract is ambiguous when it is reasonably susceptible to more than one interpretation. *International Bhd.*, 858 F.2d at 1561; *accord Contractors Management Corp. v. McDowell–Kelley, Inc.*, 136 Ga.App. 116, 220 S.E.2d 473, 476 n. 2 (1975) (contract ambiguous if it "may fairly be understood in more ways than one").

■ Accordingly, to establish that the trial court erred when it refused to consider extrinsic evidence the retirees must show that the 1984 and 1986 agreements are reasonably susceptible to more than one interpretation. They are aided by the principle that the parol evidence rule should not be rigidly applied to labor contracts. *SEPTA v. Brotherhood of R.R. Signalmen*, 882 F.2d 778, 784 (3d Cir.1989), *cert. denied*, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990); *Arizona Laborers, Teamsters, and Cement Masons Local 395 Health and Welfare Trust Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1517 (9th Cir.1985); *NLRB v. L.B. Priester & Son, Inc.*, 669 F.2d 355, 365 (5th Cir.1982).[3] Even so, their contention that the contract is unclear cannot be established by mere assertions of ambiguity. *Orkin Exterminating Co.*, 849 F.2d at 1354. The language of the contract is the starting point for our analysis.

■ Read by itself, the phrase "extended coverage ... shall be provided at the

---

**3.** The parties dispute whether this court should adopt the "Yard–Man inference." In *Yard–Man* the Sixth Circuit concluded that the clause of a CBA providing for the duration of retirees' insurance benefits was ambiguous. *Yard–Man*, 716 F.2d at 1480. While attempting to resolve the ambiguity, the court inferred that "when the parties contract for benefits which accrue upon achievement of retiree status, there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree." *Id.* at 1482. *But see United Paperworkers*, 908 F.2d at 1261 n. 12; *Anderson*, 836 F.2d at 1516 (rejecting any general inference of intent to vest retirees' benefits). *Yard–Man* is distinguishable because the Sixth Circuit only used the inference to help it resolve an ambiguity and never indicated that the inference could establish an ambiguity. In any event, it is not necessary to resort to any inference to conclude that this contract is subject to more than one meaning.

following levels.... During Retirement" could reasonably be interpreted to require KHD Deutz to provide benefits to qualifying employees throughout retirement. Indeed, any other interpretation would require a qualification that does not appear in the language of the contract. But a contract should be interpreted to give effect to all its provisions, *Guaranty Financial Servs. v. Ryan*, 928 F.2d 994, 999 (11th Cir.1991), so the language of the duration clause must be examined to see if it forecloses the retirees' interpretation of the extended coverage clause.

The duration clause gives KHD Deutz the right upon expiration of the CBA "to amend, modify, suspend or discontinue the Plans." The language does not specify whether the right to modify the plan after the CBA expires includes the right to adjust the benefits received by workers who retired under the plan or only permits KHD Deutz to change the benefits future retirees will receive. The court concluded that the only reasonable interpretation of the duration clause permitted both modification of the benefits paid to workers who retired under the plan and the benefits offered to future retirees because the clause was contained in the health agreement itself and so "should be construed as addressing the duration of the benefit plans provided in the health insurance agreements." In other words, the court concluded that the right to modify the benefits plan necessarily included the right to adjust the benefits being paid to workers who retired under the expired CBA. The court therefore accepted KHD Deutz's contention that the contract's language required the duration clause to be given full effect and that the right, under the extended coverage clause, to retirement benefits must be qualified.

It is reasonable to interpret the duration clause to qualify the right, under the extended coverage clause, to receive benefits "During Retirement" but this interpretation is not mandated by the language of either the duration clause or the extended coverage clause. It also seems reasonable to interpret the extended coverage clause as limiting KHD Deutz's right to modify

the terms of the plan to changing the benefits offered to future retirees. This interpretation would reduce the value of the duration clause to KHD Deutz, and if the parties had intended to give KHD Deutz the right to modify only the benefits offered to future retirees they could have included a provision so stating. The same arguments apply, however, to the interpretation urged by KHD Deutz: interpreting the extended coverage clause to only give the right to receive benefits during the three years of the agreement reduces the value of the extended coverage clause to the Union, and if the parties had intended to qualify the phrase "During Retirement" they could have done so.

The two provisions cannot both be given full effect, and the contract's language does not establish which one should be qualified. This distinguishes *United Steelworkers of America v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir.1988). *Connors Steel* also involved a dispute between retirees and an employer concerning whether a contract gave the employer the right to modify benefits being paid to retirees after expiration of the contract. *Id.* at 1501. The contract in *Connors Steel*, however, specifically addressed the issue by providing that qualified retirees " 'shall not have such coverage terminated or reduced so long as the individual remains retired from the company ... notwithstanding the expiration of this [basic] agreement.' " *Id.* at 1504. This court concluded that this language unambiguously established that the employer could not modify the retirees' benefits. *Id.* The specificity of the contractual language at issue in *Connors Steel* emphasizes the ambiguous nature of the contract before us. Furthermore, *Connors Steel* supports the reasonableness of the retirees' interpretation of the durational clause. The *Connors Steel* contract provided that after expiration either party could " 'negotiate with respect to insurance [and] pensions, ... existing provisions or agreements as to insurance [and] pensions ... to the contrary notwithstanding.' " *Id.* at 1502. This court concluded that this language "merely provide[d], in effect, that

the benefits to be accorded *thereafter* are subject to bargaining." *Id.* at 1504. That is consistent with the retirees' contention that the duration clause can be interpreted to give KHD Deutz the right only to modify the benefits offered to future retirees.

Both parties have offered reasonable interpretations that give full effect to one clause and qualify the other. We need not decide which interpretation is more plausible. That both are reasonable is sufficient to establish that the contract is ambiguous and that the trial court should have considered extrinsic evidence. Accordingly, the trial court erred when, without considering extrinsic evidence offered by the parties, it determined that the retirees could not demonstrate a substantial likelihood of success on the merits.

REVERSED and REMANDED.