In re UNISYS CORPORATION RE-TIREE MEDICAL BENEFITS ERISA LITIGATION.

MDL No. 969.

United States District Court, E.D. Pennsylvania.

Oct. 13, 1993.

OPINION

CAHN, Chief Judge.

Plaintiffs allege that Unisys Corporation violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, when it unilaterally modified their retiree medical benefit plans. The court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). Currently before the court is Unisys' Motion for Partial Summary Judgment. For the reasons set forth below, the court will grant the motion in part and deny it in part.

## I. BACKGROUND

In September of 1986, Sperry Corporation and Burroughs Corporation merged to form Unisys Corporation. After the merger, Unisys maintained the pre-existing medical benefit plans ("the predecessor plans") for Sperry and Burroughs retirees. In 1989, Unisys created the Post–Retirement and Extended Disability Medical Plan ("the old plan") to cover all employees who retired after April 1, 1989, most of whom were former Sperry and Burroughs employees. At that time, Unisys left the predecessor plans intact. On January 1, 1993, Unisys terminated the predecessor plans and the old plan and replaced these plans with the new Unisys Post–Retirement and Extended Disability Medical Plan ("the new plan"). Under the new plan, the retirees no longer receive free medical insurance. Instead, they must pay a portion of the monthly premiums. After January 1, 1995,

the retirees will have to pay the full cost of premiums.

Eight different lawsuits have been filed against Unisys in four jurisdictions.[1] The Judicial Panel on Multidistrict Litigation transferred all lawsuits filed outside this district here for consolidated disposition. *See* 28 U.S.C. § 1407. Plaintiffs seek primarily injunctive and other equitable relief. On June 9, 1993, after determining that Unisys "has acted on grounds generally applicable to the class," the court certified this case as a class action pursuant to Fed.R.Civ.P. 23(b)(2). The class consists of approximately 21,000 former non-union employees of Sperry, Burroughs and Unisys. Plaintiffs have been assigned to sub-classes according to who their employer was at the time of retirement.[2] Each sub-class contains some plaintiffs who accepted early retirement incentive packages ("early retirees") and some who did not ("retirees").

Plaintiffs allege that Unisys has denied them vested benefits in violation of 29 U.S.C. § 1132(a)(1)(B). Plaintiffs also allege that Unisys breached its fiduciary duty under 29 U.S.C. § 1104. Finally, plaintiffs seek relief on various estoppel theories. Unisys has moved for partial summary judgment on all claims brought by retirees. Unisys has not moved for summary judgment against the early retirees in the class.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

---

1. The eight cases are: *Bennett v. Unisys Corp.*, Civ. No. 93–1668 (E.D.Pa.); *Valle v. Unisys Corp.*, Civ. No. 93–1431 (E.D.Pa.); *McMahon v. Unisys Corp.*, Civ. No. 93–0704 (E.D.Pa.); *Romano v. Unisys Corp.*, Civ. No. 92–6938 (E.D.Pa.); *Yerkes v. Unisys Corp.*, Civ. No. 92–6906 (E.D.Pa.); *Mercure v. Unisys Corp.*, No. 2:93–CV–71055 (E.D.Mich.); *Pronk v. Unisys Corp.*, No. 3–92–812 (D.Minn.); *Lofaso v. Unisys Corp.*, No. 92–5429 (E.D.N.Y.).

2. The caption of this case is not entirely accurate. Some of the class members are disabled and are not formally considered retirees. The parties have treated the claims of disabled former employees as being identical to those of "retirees." Since counsel has not drawn a distinction, the court will consider the claims to be similar.

To avoid summary judgment, the non-moving party must identify material issues of fact as to each element of his claim. *Id.* at 323, 106 S.Ct. at 2552.

■ When considering a motion for summary judgment, the court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The court, however, may not make credibility determinations or weigh the evidence. *Id.* at 252, 106 S.Ct. at 2512. If the record thus construed could not lead the trier of fact to find for the non-moving party, then there is no genuine issue for trial. *Matsushita Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Plaintiffs urge the court to delay consideration of Unisys' motion until the close of discovery. Counsel has filed a Rule 56(f) affidavit setting forth the type of material likely to emerge from further discovery.[3] None of this material, however, would change the court's analysis of the threshold legal question. *See Lunderstadt v. Colafella,* 885 F.2d 66, 71 (3d Cir.1989) (Rule 56(f) motion must identify particular information that would preclude summary judgment).[4] Whether an ERISA plan is ambiguous is a question for the court, as a matter of law. *Alexander v. Primerica Holdings, Inc.,* 967 F.2d 90, 92 (3d Cir.1992). Summary judgment "should be entered only if the pertinent provisions of the contractual documents are unambiguous; it is the lack of ambiguity within the express terms ... that forecloses any genuine issues of material fact." *Ryan v. Chromalloy American Corp.,* 877 F.2d 598, 602 (7th Cir.1989). To the extent the plan language is ambiguous, summary judgment is inappropriate.

## III. *DENIAL OF BENEFITS*

ERISA provides that plan participants may bring a civil action to recover benefits due and to clarify their rights to future benefits. 29 U.S.C. § 1132(a)(1)(B). Plaintiffs allege that Unisys has reneged on its promise to provide lifetime health coverage. They assert that Unisys' intent to confer vested benefits can be discerned from the official plan documents or, to the extent those documents are ambiguous, from the informal communications between the parties. Plaintiffs seek money damages for Unisys' failure to pay premiums since January 1, 1993. They also seek declaratory and injunctive relief to force Unisys to continue paying the full cost of premiums.

Unisys maintains that it has an inherent right to terminate the retiree's medical benefit plan. Unisys argues that it expressly reserved its termination rights in the official plan documents. Because it believes that the reservation of rights language is unambiguous, Unisys has moved for summary judgment.

■ ERISA recognizes two types of benefit plans: pension plans and welfare plans. *Deibler v. Local Union 23,* 973 F.2d 206, 209 (3d Cir.1992). A benefit plan that provides medical insurance for its participants is considered a welfare plan. 29 U.S.C. § 1002(1). The parties agree that the old plan and predecessor plans are welfare plans, but they disagree about whether they conferred vested benefits upon plaintiffs. Welfare benefits do not vest automatically, *Alexander,* 967 F.2d at 95, but the plan sponsor may, under certain circumstances, become obligated to maintain benefits at a fixed level for a fixed period of time. *Wise v. El Paso Natural Gas Co.,* 986 F.2d 929, 937 (5th Cir.1993). Congress rejected automatic vesting for welfare plans, 29 U.S.C. § 1051, because plan

---

3. Fed.R.Civ.P. 56(f) provides: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just."

4. Plaintiffs argue that "a proffer and analysis of extrinsic evidence will be necessary before the Court can determine whether documents are ambiguous...." Rule 56(f) affidavit of Alan M. Sandals. As discussed, *infra* Section III of this opinion, plaintiffs' assertion is only partly correct. Only after a plausible alternative meaning is proffered, does the court actually examine the extrinsic evidence.

sponsors cannot accurately predict future costs. The court must determine whether, despite this uncertainty, Unisys, Burroughs or Sperry chose to confer vested benefits upon its retirees.

■■■ The scope of a welfare plan is defined by the summary plan description and the official plan documents. *Henglein v. Informal Plan For Plant Shutdown Benefits,* 974 F.2d 391, 400 (3d Cir.1992); *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir.1988). The courts have held that such plans are not subject to amendment as a result of informal communications between employer and employees. *Moore,* 856 F.2d at 492. This includes oral promises made by the employer or its agents. *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1163 (3d Cir.1990); *Musto v. American General Corp.,* 861 F.2d 897, 910 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). The Eleventh Circuit Court of Appeals has succinctly stated that: "any retirees' right to lifetime medical benefits at any particular cost can only be found if it is established by contract under the terms of the ERISA-governed benefit plan document." *Alday v. Container Corp. of America,* 906 F.2d 660, 665 (11th Cir.1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991). This rule of construction furthers ERISA's mandate that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1).

■■■ ERISA requires that the written instrument contain a comprehensive description of plan coverage. *See* 29 U.S.C. § 1022. The Third Circuit Court of Appeals has held that 29 U.S.C. § 1022 requires plan sponsors to "warn employees of adversity." *Alexander,* 967 F.2d at 94. There are, under ERISA, two types of adversity: loss of benefits under an existing plan *and* loss of benefits due to termination of a plan. Subsection 1022(b) provides in pertinent part that "[t]he plan description and summary plan description shall contain the following information: ... circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." It is unclear from this statutory language whether plan sponsors must warn participants about both types of adversity.

As a threshold matter, the parties disagree about what the background rule should be, namely whether or not termination rights are retained when governing plan documents are silent. *See Bidlack v. Wheelabrator Corp.,* 993 F.2d 603, 608 (7th Cir.1993) (*en banc*). Plaintiffs maintain that a plan sponsor's failure to reserve its termination rights constitutes a waiver of those rights. This precise issue was left undecided in *Hozier,* 908 F.2d 1155, 1162 (3d Cir.1990), where the court noted that "plaintiffs might be correct that an employer's purported amendment is invalid if the original plan's governing documents fail to reserve an amendment power expressly." Similarly, the Third Circuit was not squarely faced with the issue in *Alexander,* where the only issue on appeal was whether the reservation of rights language was ambiguous. *Id.* at 92.

Unisys argues that its inherent right of termination is preserved unless explicitly waived in the summary plan description. Unisys relies on *Wise,* in which the Fifth Circuit held that § 1022(b) "relates to an individual employee's eligibility under then existing, current terms of the Plan and not to the possibility that those terms might later be changed, as ERISA undeniably permits." 986 F.2d at 935. Under the holding in *Wise,* "mere silence is not of itself abrogation," and consequently, plan sponsors need not inform participants of the possibility that an existing plan will be terminated. *Id.* at 938.

This dispute is academic because Unisys and its predecessors have chosen to include reservation of rights clauses in the relevant plan documents. *Alexander* holds that summary judgment may not be granted unless the reservation of rights language is unambiguous.

Plaintiffs urge that the motion for partial summary judgment should be denied for two reasons. First, they argue that the reservation of rights language is ambiguous. Second, to the extent the reservation of rights language is not ambiguous, they argue that it is inconsistent with other portions of the summary plan descriptions that guarantee

lifetime medical coverage.[5] The court will address these arguments in turn.

The court's analysis of the operative language is guided by the decision in *Mellon Bank, N.A. v. Aetna Business Credit*, 619 F.2d 1001 (3d Cir.1980).[6] To determine whether or not a document is ambiguous, the court must:

> consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning. The trial judge must then determine if a full evidentiary hearing is warranted. If a reasonable alternative interpretation is suggested, even though it may be alien to the judge's linguistic experience, objective evidence in support of that interpretation should be considered by the fact-finder.

*Id.* at 1011. Similarly, in *Senn v. United Dominion Industries, Inc.*, 951 F.2d 806, 814–815 (7th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2992, 125 L.Ed.2d 687 (1993), the court held that "the question of whether ... plan documents contain agreements to vest entitlement to lifetime retirement benefits should be determined without reference to extrinsic evidence if the terms of the writings involved are unambiguous."[7] Accordingly, the court turns to the applicable documents.

### A. UNISYS PLAN DOCUMENTS

 The old plan applied to all class members who retired after April 1, 1989 (or May 1, 1989, in the case of former Burroughs employees.)[8] The summary plan description contains the following disclaimer:

> Unisys expects to continue the plans described in this booklet, but necessarily reserves the right to change or end them at any time. The Company's decision to change or end the plans may be due to changes in federal or state laws governing welfare benefits, the requirements of the Internal Revenue Code or ERISA, the provisions of a contract or a policy involving an insurance company or any other reason.

Exhibit 2, Appendix in Support of Motion for Partial Summary Judgment. Unisys argues that this language is an unqualified expression of its unilateral right to terminate the plan. Plaintiffs have proffered several alternative interpretations of this language, none of which are plausible. First, they maintain that the reservation of rights language could be read to apply only to active employees. Plaintiffs have submitted a series of affidavits from class members who understood there to be a "lock-in" policy such that changes in coverage affected active employees but not retirees. Plaintiffs have also proffered extrinsic evidence that purports to establish a course of conduct under which

---

**5.** At oral argument, counsel for Unisys noted that this back-up argument is only available to plaintiffs in the Sperry sub-class, because the Unisys and Burroughs plan documents do not discuss "lifetime benefits." The court agrees. Therefore, the court will confine its discussion of this argument to Section III–C of this opinion, which discusses the Sperry plan documents. Plaintiffs argue that Unisys places too much emphasis on the absence of "lifetime" language in the Unisys and Burroughs documents. They maintain that "[i]t was not the corporate culture in Burroughs to use the express 'lifetime' word, but it's our view—and the cases back this up—you don't have to use the word 'lifetime' to imply a vested benefit." Transcript of Oral Argument at p. 47. At this stage of the proceedings, however, the court is not interested in comparing the "corporate culture" of Unisys, Burroughs, and Sperry. The court must confine its analysis to the written documents. In any event, to the extent the corporate culture included lifetime welfare benefits, one would expect the documents to reflect that culture.

**6.** There was some suggestion that *Mellon Bank* does not apply in the ERISA context. Although *Mellon Bank* was decided as a matter of state contract law, it has been cited with approval in subsequent ERISA decisions. *See Alexander*, 967 F.2d at 95 n. 1.

**7.** It appears that *Senn* is still good law, notwithstanding the Seventh Circuit's recent decision in *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603 (7th Cir.1993) (*en banc*).

**8.** The Unisys sub-class includes: "[a]ll non-union retired, disabled and other eligible former employees and their spouses and dependents who as of November 3, 1992 were participants in or beneficiaries of the employee welfare benefit plans pursuant to which Unisys has provided medical benefits to former employees of Unisys who retired, became disabled or otherwise became eligible on or after April 2, 1989, in the case of former Sperry employees, and May 2, 1989, in the case of former Burroughs employees."

plan modifications were not applied to retirees. If plaintiffs alternative interpretation of the reservation of rights clause was plausible, the court would be obliged to consider this evidence. *Mellon,* 619 F.2d at 1011. Plaintiffs interpretation, however, is arbitrary and finds no support in the language of the plan. The clause makes no distinction between active employees and retirees. Furthermore, the act of retirement itself does not trigger the vesting of welfare benefits. *Howe v. Varity Corp.,* 896 F.2d 1107, 1110 (8th Cir. 1990); *Etherington v. Bankers Life & Casualty Co.,* 747 F.Supp. 1269, 1275 (N.D.Ill. 1990), *aff'd,* 968 F.2d 1218 (7th Cir.1992).

Second, plaintiffs argue that the reference to government regulations in the reservation of rights clause creates ambiguity. They note, quite correctly, that similar language was found to be ambiguous in *Alexander.* In *Alexander,* the governing documents contained the following language:

> The company expects to continue this plan indefinitely, but necessarily reserves the right to amend, modify, or discontinue the plan in the future in conformity with applicable legislation.

967 F.2d at 92. This clause could have been read to mean that changes would be made only when necessary to conform to legislative changes. Plaintiffs urge that the same interpretation may apply to the Unisys clause. There is, however, an important difference between the clauses, namely that Unisys' reservation of rights clause states that the plan can be terminated for "any other reason." Consequently, the court holds that Unisys has unambiguously reserved its unilateral right to terminate the plan. Accordingly, the motion is granted with respect to the denial of benefits claims of the Unisys sub-class.

### B. *BURROUGHS PLAN DOCUMENTS*

 Burroughs' first post-ERISA summary plan description was issued to employees in 1977.[9] The summary plan description was updated in 1983. Both the 1977 and 1983 versions contained the following reservation of rights language:

> The plan administrator may terminate, suspend, withdraw, amend or modify the plan in whole or in part *at any time,* subject to the applicable provisions of the group insurance policies.

Exhibit 6, Appendix in Support of Motion for Partial Summary Judgment. (emphasis in original). In 1985, Burroughs hired an independent contractor to administer its medical benefits plan. The new summary plan description stated that:

> While Burroughs does not presently plan to do so, it necessarily reserves the right to terminate or modify the plan *at any time,* which will result in the termination or modification of your coverage.

Exhibit 8, Appendix in Support of Motion for Partial Summary Judgment. (emphasis in original). The above language was in effect until January 1, 1993. In light of this language, it is clear that Unisys has not pulled Burroughs' amendment rights "out of the hat." *See* Transcript of Oral Argument at p. 44. In fact, Burroughs consistently reserved its statutory rights. Plaintiffs had the opportunity both in their briefs and at oral argument to identify ambiguity in the above language. They failed to do so. Instead, plaintiffs have produced voluminous amounts of extrinsic evidence to contradict the reservation of rights clauses. These informal communications (whether human resources bulletins, newsletters or internal memoranda) do not alter the terms of the written plan documents. *See Moore,* 856 F.2d at 492. Moreover, plaintiffs have not proffered a reasonable alternative construction of the plan documents. With respect to the Burroughs sub-class, plaintiffs reiterate their contention that the reservation of rights language can be read to apply only to active employees. The court rejects this argument because the plan documents simply do not differentiate be-

---

**9.** The Burroughs sub-class includes "[a]ll non-union retired, disabled and other eligible former employees and their spouses and dependents who as of November 3, 1992 were participants in or beneficiaries of the employee welfare benefit plans pursuant to which Unisys or its predeces-sor, Burroughs Corporation, has provided medical benefits to former employees of Burroughs Corporation (or any division or unit thereof) who retired, became disabled or otherwise became eligible on or before May 1, 1989."

tween active and retired employees. Consequently, the court finds that Burroughs unambiguously reserved the termination rights that Unisys now seeks to exercise. Accordingly, the motion is granted with respect to the denial of benefits claims of the Burroughs sub-class.

## C. SPERRY PLAN DOCUMENTS

■ In 1984, Sperry introduced a comprehensive plan that covered all employees in its numerous unincorporated business groups.[10] The analysis of pre–1984 plan coverage is more complex because many of the business groups had different medical benefit plans. The reservation of rights language in the various summary plan descriptions is, however, quite consistent. Assuming, *arguendo*, that the reservation of rights clauses are unambiguous, the court must still address plaintiffs' back-up argument. Plaintiffs maintain that the Sperry plan documents are internally inconsistent insofar as they promise lifetime benefits but provide for their termination at any time.[11] For example, some of the Sperry plan documents contain the following language:

> When you retire ... the comprehensive medical expense benefits then in force for you and your eligible dependents under this plan will be continued for the rest of your life.

Exhibit 144, Plaintiffs' Proposed Stipulations.

> When you retire ... the Blue Cross and Blue Shield coverage then in force for you and your eligible dependents will be continued at no cost to you for the rest of your life.

Exhibit 107, Plaintiffs' Proposed Stipulations. Because the Sperry summary plan descrip-

tions contain promises of lifetime benefits and reservation of rights language, they are internally inconsistent.[12] Plaintiffs argue that this internal inconsistency renders the Sperry plan documents ambiguous.

■ Unisys' rejoinder is two-fold. First, Unisys asserts that the reservation of rights clauses must be read in a vacuum. The court rejects this argument because it flies in the face of the rule that plan documents are to be read as an integrated whole. *See Alexander*, 967 F.2d at 93. Second, Unisys argues that there is nothing inconsistent about saying, "you have lifetime benefits under the existing plan." In fact, Unisys points out that § 1022(b) requires it to describe the nature of benefits under an existing benefit plan. Unisys argues that it would be absurd to construe the reporting and disclosure provisions such that compliance with § 1022(b) triggers the vesting of otherwise non-vested benefits. The court finds Unisys' position unpersuasive. Unisys could have adequately described the health benefits without discussing "lifetime" benefits.

In *Musto*, 861 F.2d 897, the Sixth Circuit Court of Appeals arrived at the same legal conclusion that Unisys now advances. *Musto* involved a class of retirees that brought suit to block changes in their medical coverage. The district court issued a preliminary injunction restraining the employer from increasing the plaintiffs' insurance premiums. The district concluded that:

> The termination/modification clause contained in the summary plan descriptions clearly and expressly reserve[s] the right to amend and terminated the medical insurance benefit plan. At the same time, however, the plan descriptions also prom-

---

**10.** The Sperry sub-class includes "[a]ll non-union retired, disabled and other eligible former employees and their spouses and dependents who as of November 3, 1992 were participants in or beneficiaries of the employee welfare benefit plans pursuant to which Unisys or its predecessor, Sperry Corporation, has provided medical benefits to former employees of Sperry Corporation (or any division or unit thereof) who retired, became disabled or otherwise became eligible on or before April 1, 1989."

**11.** The plaintiffs in the Unisys and Burroughs sub-classes cannot avail themselves of this back-up argument because no similar language can be

found in the documents that governed their benefits.

**12.** The parties have agreed that to simplify the remaining issues at trial, further sub-classes should be denominated. The parties should be prepared to explain exactly which documents control with respect to a particular group of Sperry retirees. For example, they will need to explain whether the benefits for a post–1984 Sperry/Vickers retiree are governed by both the Sperry/Vickers medical plan and the comprehensive Sperry medical plan that replaced it in 1984.

ise to continue the plans after the plaintiffs [have] retired, without further cost to the retiree. The Court cannot read both provisions together without reaching the conclusion that the provisions conflict and require interpretation of what the parties mutually intended by placing the terms in the agreement.

*Musto v. American General Corp.*, 615 F.Supp. 1483, 1499 (M.D.Tenn.1985). The Sixth Circuit Court of Appeals reversed, holding that the district court had erred as a matter of law in concluding that the plan provisions were irreconcilable. The court noted that:

> To read this summary as saying that the plan can never be changed in such a way as to mandate retiree contributions for continued medical coverage is to read into the summary something its authors did not put there (*a promise to provide lifetime 'paid up' medical insurance*), while reading out of the summary something that clearly was put there (an express reservation of the right to change the plan).

*Musto*, 861 F.2d at 906 (emphasis added). This case is distinguishable from *Musto* because the authors of the Sperry plan documents did make a promise to provide lifetime benefits, albeit a promise that is inconsistent with the reservation of rights language.

Unisys also relies upon *Sprague v. General Motors Corp.*, 768 F.Supp. 605 (E.D.Mich. 1991), where the court held that the promise of lifetime health care coverage could be reconciled with reservation of rights language. The court explained as follows:

> These provisions effectively informed plaintiffs that GM's present policy was to pay the full cost of basic health care coverage during plaintiff's retirement, but that GM reserved the right to change that policy. To show that GM violated the plan when it instituted the 1988 changes, plaintiffs would have to show that GM effectively promised never to change the plan during plaintiff's retirement. I find no such promise in any of the plan documents.

Rather, I find that GM unambiguously reserved the right to change the plan, and thus did not agree in the general plan documents to provide salaried employees with vested health benefits.

*Id.* at 611. If controlling and/or persuasive, *Sprague* would foreclose any further analysis and dictate that Unisys' motion should be granted as to the denial of benefits claims of the Sperry sub-class. However, this court disagrees with the analysis in *Sprague*. The district court held that *Musto* and *Moore* compelled it to grant GM's motion. *Moore*, however, involved informal promises rather than promises contained in the formal plan documents. *Musto*, as discussed *supra*, involved plan documents that did not promise "lifetime" coverage.[13]

Plaintiffs rely on several collective bargaining cases which hold that a factual question as to the duration of benefits arises upon the expiration of a collective bargaining agreement that promises extended medical coverage. *See Wheelabrator*, 993 F.2d 603; *Stewart v. KHD Deutz of America, Corp.*, 980 F.2d 698 (11th Cir.1993). Unisys asserts that these cases are unpersuasive outside the collective bargaining context. Federal labor policy (i.e., The Labor–Management Relations Act) "neither favors nor disfavors the vesting of retirees' health benefits." *Stewart*, 980 F.2d at 702. It is not clear, however, that this factor provides a principled basis upon which to distinguish collective bargaining cases from ERISA cases. ERISA, though it does not provide for automatic vesting of health benefits, does not express a clear preference for or against vesting. *Wheelabrator*, 993 F.2d at 605.

Once the court determines that a document is in fact ambiguous, it makes sense to apply different rules of construction. For example, plaintiffs urge that the doctrine of *contra proferentem* should apply to ambiguous plan documents drafted solely by plan sponsors. A different interpretative presumption might apply in the collective bargaining context. It is important to remem-

13. The presence of the words "life" and "lifetime" in the Sperry plan documents, and their absence from the Unisys and Burroughs plan documents is of particular importance. The written promise of "lifetime benefits" has powerful meaning to retiring employees; a meaning that cannot be ignored as Unisys urges.

ber, however, that the threshold inquiry is simply whether the document is ambiguous. There is no reason to think that determinations about ambiguity should be made differently with respect to collective bargaining agreements than to benefit plans.

In *Stewart*, the collective bargaining agreement provided for health benefits during retirement but also contained a duration clause, which stated that "[u]pon the expiration or termination of this Agreement, the Company shall have the right to continue the Plans covered herein or to amend, modify, suspend or discontinue the Plans." 980 F.2d at 701. The trial court found that the reservation of rights language was unambiguous and denied the plaintiffs' request for injunctive relief. The Eleventh Circuit reversed, holding that "[t]he two provisions cannot both be given full effect, and the contract's language does not establish which one should be qualified." *Id.* at 703. The Eleventh Circuit directed the trial court to consider extrinsic evidence when assessing the plaintiffs' likelihood of success. In this case, the court is also faced with provisions that cannot both be given full effect.

In *Wheelabrator*, the collective bargaining agreement conferred benefits that appeared to outlast the duration of the agreement. The district court granted summary judgment for the employer, finding no intention in the agreement to provide benefits for life at no cost. The Seventh Circuit Court of Appeals reversed, holding that the promise of continuing post-retirement benefits could plausibly be read to mean that retirees had vested benefits. 993 F.2d at 608. It is important to note that the *Wheelabrator* agreement, unlike the agreement in *Stewart* and the Sperry plan documents, did not contain reservation of rights language. A reservation clause would not have been superfluous even though the bargaining agreements expire automatically, because "sometimes . . . a contract creates entitlements that outlast it." *Wheelabrator*, 993 F.2d at 606. Thus, *Wheelabrator* is distinguishable insofar as the collective bargaining agreement did not contain

a reservation of rights clause. Nevertheless, the court finds *Wheelabrator* and *Stewart* persuasive insofar as they hold that internally inconsistent documents are ambiguous. This determination is consistent with *Moore*, 856 F.2d at 492–493. In *Moore*, the court held that *informal* promises of lifetime benefits do not alter the terms of a written plan document, but the court also held that "the use of language such as 'lifetime' or 'at no cost' [in plan documents] might conceivably create a triable issue of fact on a contract theory." *Id.* at 493. Plaintiffs have proffered extrinsic evidence which, if believed by the finder of fact, would establish that Sperry intended to confer vested medical benefits upon its employees. Consequently, the court finds the Sperry plan documents to be ambiguous. The motion is denied with respect to the denial of benefits claim of the Sperry sub-class.

## IV. BREACH OF FIDUCIARY DUTY

■ Plaintiffs allege that Unisys is liable under 29 U.S.C. § 1109 for breaching its fiduciary duty as plan administrator. ERISA provides that plan participants may bring a civil action "for appropriate relief under [§ 1109]." 29 U.S.C. § 1132(a)(2). The breach of fiduciary duty claim has two components. First, plaintiffs challenge the termination of benefits itself. Second, plaintiffs argue that Unisys and its predecessors, acting through their agents, made oral misrepresentations about the duration of retiree medical coverage. The first component of the claim is clearly without merit. In *Hozier*, 908 F.2d at 1162, the Third Circuit Court of Appeals held that a decision to amend or terminate a welfare benefit plan is "unconstrained by the fiduciary duties that ERISA imposes on plan administration." *See also Senn*, 951 F.2d at 817–818; *Musto*, 861 F.2d at 912. A denial of benefits claim under § 1132(a)(1)(B) is the proper vehicle for such a challenge.[14]

■ The second component of plaintiffs' claim bears further scrutiny. Plan administrators breach their fiduciary duty

---

14. Plaintiffs have not explained what damages flow from the alleged breach, insofar as the breach is conceptually distinct from the denial of benefits itself. It is important to note that the remedies available under § 1109 and § 1132(a)(1)(B) are different.

when, in response to inquiries by plan participants, they make affirmative misrepresentations about changes in a benefit plan. *Fischer v. PECO*, 994 F.2d 130, 135 (3d Cir.1993). The *Fischer* plaintiffs had retired just before the announcement of an early retirement sweetener, after having been assured that no such sweetener would be available. Plaintiffs conceded that the employer was not obligated to enhance pension benefits, but they contended that it "had an obligation under ERISA to tell the truth about such decisions when asked by plan participants." The district court found no evidence of material misrepresentations and granted summary judgment for the employer. The Third Circuit Court of Appeals reversed and remanded, holding that "[t]he content of the particular communications PECO allegedly made to members of the plaintiff class and whether such communications constituted affirmative misrepresentations are questions of fact...." *Id.* at 135. Plaintiffs assert that similar factual issues are raised by their misrepresentation claims.

■ If *Fischer* controlled, it would certainly preclude summary judgment in this case. The court, however, finds *Fischer* distinguishable. *Fischer* pertains to actual or contemplated changes in an existing plan, not the terms of an existing plan.[15] As discussed, *supra*, the contours of an existing benefit plan are defined exclusively in the written plan documents.[16] To apply *Fischer* in this context is, as a practical matter, to subvert the well-established rule that informal communications do not alter the terms of the written plan documents. It would be imprudent to fashion a rule that further encourages plan participants to rely upon oral representations about the scope of their benefits plan. Rather, *Fischer* should be read narrowly to provide a remedy to persons who, due to their reliance upon an alleged

misrepresentation, are not plan participants and by definition cannot proceed on a denial of benefits theory.[17]

In *Hozier*, the court held that plan administration does not encompass amendment decisions. 908 F.2d at 1161. Accordingly, the court concludes that the alleged oral misrepresentations about the possibility of amendments to the plan do not amount to a breach of fiduciary duty. The motion is granted with respect to all breach of fiduciary duty claims.

## V. FEDERAL PREEMPTION

■ Congress intended that ERISA would completely preempt the field of employee benefit law. *Reichelt v. Emhart Corp.*, 921 F.2d 425 (2d Cir.1990) (interpreting 29 U.S.C. § 1144(a)), *cert. denied*, —— U.S. ——, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991). Section 1144(a) provides in pertinent part that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." Thus, plaintiffs' remaining claims survive only to the extent they are consistent with federal common law.

■ Plaintiffs seek relief on theories of promissory estoppel and equitable estoppel. In *Hozier*, the Third Circuit Court of Appeals limited the availability of estoppel claims under ERISA to cases involving "extraordinary circumstances." 908 F.2d at 1165 n. 10; *see also Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310 (3d Cir.) ("equitable estoppel is not available in ERISA cases absent 'extraordinary circumstances' "), *cert. denied*, —— U.S. ——, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991). There are no substantiated allegations of fraud or bad faith on

---

15. Plaintiffs are not alleging that they were misled about the actual decision to terminate the existing plans. Their contention is that they were never informed that such a decision was permissible under terms of the plan. Plaintiffs advance this argument despite the presence of the reservation of rights language.

16. It is important to note that "ERISA does not impose a 'duty of clairvoyance' on fiduciaries." *Fischer*, 994 F.2d at 135. (citation omitted). To

the extent that the alleged misrepresentations were simply erroneous predictions about the likelihood of plan termination, they do not constitute a breach of the fiduciary duty.

17. The *Fischer* court relied heavily upon *Berlin v. Michigan Bell*, 858 F.2d 1154 (6th Cir.1988). It is important to note that the plaintiffs in *Berlin* had retired just before a sweetener was offered.

Unisys' part.[18] Furthermore, estoppel claims are available only when plan documents are adjudged ambiguous, *Alday,* 906 F.2d at 666, *and* the plaintiffs can show detrimental reliance. *Etherington,* 747 F.Supp. at 1281. As court noted in *Etherington:*

> After all, the choice that would have confronted plaintiffs had they specifically been told about the situation that they now complain was left undisclosed was really a Hobson's choice from their perspective: They could have continued work as they did and ended up with the diminished benefits or they could have left their jobs and ended up with no benefits whatever. Hence even on the arguendo assumption that plaintiffs did rely on those asserted 'misrepresentations' in continuing to work for [their employer], no facts have been advanced that could support a reasonable inference that such reliance injured plaintiffs in any real way.

747 F.Supp. at 1281. Unlike the early retirees, who are not the subject of this motion, the retiree plaintiffs cannot demonstrate detrimental reliance. Accordingly, Unisys' motion is granted as to all estoppel claims.

## VI. *CONCLUSION*

The Unisys and Burroughs summary plan descriptions contain uncontradicted and unambiguous reservation of rights language. The Sperry summary plan descriptions are internally inconsistent to the extent they contain reservation of rights language and guarantees of lifetime coverage. The court must consider extrinsic evidence at trial to clarify this ambiguity in the Sperry plans. Accordingly, Unisys' motion is granted as to the denial of benefits claims advanced by the Unisys and Burroughs sub-classes, but denied as to the denial of benefits claims advanced by the Sperry sub-class.

Unisys' decision to change benefits plans is not constrained by ERISA's fiduciary duty provisions. Furthermore, alleged oral misrepresentations about the terms of the plans by agents of Unisys and its successors, in their capacity as plan administrators, do not constitute breaches of their fiduciary duty. Consequently, Unisys' motion is granted as to all breach of fiduciary duty claims.

Plaintiffs have failed to demonstrate that they relied to their detriment on oral and written representations of the plan administrators. Consequently, Unisys' motion is granted with respect to all estoppel claims. An appropriate order follows.

---

**18.** In a post-argument letter brief, counsel for the Burroughs sub-class quotes the following from an affidavit of a class member/former Burroughs employee, as evidence of bad faith: "I know that retirees relied upon the above representations and the representations were important to them because in my meetings the retirees frequently asked for reassurance that Burroughs would continue to provide the no or low cost health benefits during their lifetimes. I specifically recall stating 'absolutely'. Further, I regarded and understood this benefit to be locked in upon retirement." Letter Brief at p. 5–6. This does not demonstrate bad faith conduct by Burroughs.