967 F.2d 90
 15 Employee Benefits Cas. 1881
 Judd ALEXANDER; and Richard Edwards, on Behalf of
themselves and as representatives of a Class of
persons similarly situated, Appellants,
v.
PRIMERICA HOLDINGS, INC., formerly known as Primerica
Corporation; Board of Directors of Primerica Holdings,
Inc.; James Dimon; Irwin Ettinger; John Fowler; John
Does 1-10 (being individual members of the Primerica
Holdings, Inc. Board of Directors); ABC (being the
administrator of the American Can Salaried Retirees Group
Insurance Plan); and John Doe 15-25 (being the individual
members of the Board, group or committee functioning as the
administrator of the American Can Salaried Retirees Group
Insurance Plan).
 No. 91-5712.
 United States Court of Appeals,
Third Circuit.
 Argued March 5, 1992.
Decided June 25, 1992.
 
 Gerald A. Liloia, Esquire (argued), Robert D. Towey, and Glenn Curving, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, N.J., for appellants.
 Saul P. Morgenstern, Jacob S. Pultman, Dewey Ballantine, New York City, and Donald A. Robinson, Robinson, St. John & Wayne, Newark, N.J. (Richard M. Green, Primerica Holdings, Inc., New York City and Sanford M. Litvack (argued) Burbank, Cal., of counsel), for appellees.
 Before: STAPLETON and MANSMANN, Circuit Judges and POLLAK, District Judge.*
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 At issue here is whether a particular clause in an ERISA summary plan description reserved a company's right to reduce employee welfare benefits. The district court opined that it did. Because we conclude that the clause is ambiguous, we will reverse the district court's grant of summary judgment, and we will remand the case for a determination by the district court, as fact finder, as to whether the company promised lifetime fixed-cost benefits to its retirees.
 
 I.
 
 2
 The plaintiffs, Judd Alexander and Richard Edwards, are retired salaried employees of American Can Company. As retirees, they received health and life insurance from the American Can Salaried Retirees Group Insurance Plan. In this class action, they contest a tenfold increase in their monthly premiums, instituted by Primerica Holdings, Inc., a successor in interest to American Can. In essence, the retirees claim that the increase violated the terms of the Plan. Primerica argues that the Plan reserved the right to reduce benefits and, therefore, that the Plan did not promise any vested benefit.
 
 
 3
 Because a formal plan document does not exist, our knowledge of the Plan arises from three summary plan descriptions. These summary plan descriptions provide that, upon retirement, salaried employees and their spouses will receive the Plan's Basic Medical coverage and that the death of a retiree does not affect a spouse's right to benefits. The Plan's Major Medical Benefits will terminate, however, if a retiree ceases to contribute to the Plan.
 
 
 4
 The following section of one summary plan description figures prominently in this litigation:
 
 Extent and Limit of Coverage
 
 5
 The Company expects to continue this Plan indefinitely, but necessarily reserves the right to amend, modify, or discontinue the Plan in the future in conformity with applicable legislation. The Plan does not provide for benefit payments in any case or under any condition not identified and provided for in this booklet. The Group Insurance Policy and the certificates thereunder issued by the Insurance Company are consistent with the terms and conditions outlined in this booklet.
 
 
 6
 If any changes become effective under the Medicare Program by reason of current or future Governmental legislation or regulations, then full consideration will be given to appropriate modification in this Retired Group Insurance Plan.
 
 
 7
 App. 172. This section appeared with a slight variation in one other summary plan description. Primerica argues that the amendment clause in the section's first sentence reserves an unqualified right to reduce or terminate benefits. To the contrary, the retirees argue that it reserves only a limited right.
 
 
 8
 In 1989, shortly after it acquired American Can, Primerica raised monthly premiums from $5 to $50 per person. The retirees then filed this class action, claiming that the increase violated the terms of the Plan, that the reduction of vested benefits violated ERISA, that Primerica's violation of ERISA resulted in a breach of its fiduciary duty, and that the Plan's ambiguity in itself violated ERISA.
 
 
 9
 Primerica, in a motion for summary judgment, argued that the summary plan descriptions notified the employees of the Plan's absolute right to reduce or terminate benefits, and that therefore the Plan did not promise vested benefits. In response, the retirees argued that the summary plan descriptions only notified employees that the Plan would necessarily change if required by law. The district court held that the clause was unambiguous, granted summary judgment for the defendants, and dismissed the complaint. The retirees appealed.
 
 
 10
 We have jurisdiction over the final order of the district court. 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. Country Floors, Inc. v. Partnership of Gepner & Ford, 930 F.2d 1056, 1060 (3d Cir.1991).
 
 II.
 
 11
 The district court held that because the amendment clause unambiguously reserved the right to the Plan to reduce or discontinue benefits, the Plan did not promise lifetime benefits. Whether an ERISA plan is ambiguous is a question of law. Taylor v. Continental Group, 933 F.2d 1227, 1232 (3d Cir.1991). We review the district court's decision accordingly.
 
 A.
 
 12
 The amendment clause, which is at the center of this appeal, reads:
 
 
 13
 The Company [American Can] expects to continue this plan indefinitely, but necessarily reserves the right to amend, modify, or discontinue the Plan in the future in conformity with applicable legislation.
 
 
 14
 The defendants suggest that this clause means that American Can might modify the Plan at any time and for any reason. The retirees suggest that the clause means that American Can will only modify the Plan if necessary to conform with applicable legislation. We find that the clause is ambiguous, that is, "subject to reasonable alternative interpretations." Taylor, 933 F.2d at 1232.
 
 
 15
 For instance, the word necessarily might mean "understandably," as the defendants proposed at oral argument, but the word might also mean "as a necessary result or consequence." See Webster's Third New International Dictionary (unabridged), at 1510 (1981). The phrase in conformity with applicable legislation may either limit the right to modify (as the retirees urge) or notify employees that any change will conform to the law (as the defendants urge). The word legislation may imply "change in the law," which would support the retirees' position, but perhaps it simply means "law," which would support the defendants' position. Similarly, the word indefinitely either means "continuing without limit" or "undetermined."
 
 
 16
 The variant of the amendment clause does not eliminate the ambiguity. It provides:
 
 
 17
 American expects to continue this Plan indefinitely, but necessarily reserves the right to amend, modify, or discontinue the Plan in conformity with applicable legislation and also subject to any applicable collective bargaining agreement.
 
 
 18
 The additional words, subject to ..., do not elucidate the clause's meaning.
 
 
 19
 Nor is the ambiguity eliminated by the Medicare clause, which assures participants that, if Medicare law changes, "full consideration will be given to appropriate modification" of the Plan. Interpreted one way, the Medicare clause conforms to the retirees' position; it reassures the employees that although American Can would reduce benefits if the law required, the company might also increase them if Medicare law created shortfalls. Interpreted another way, the Medicare clause conforms to the defendants' position; it reassures that American Can will give the retirees' needs "full consideration," even without the obligation to maintain benefits.
 
 
 20
 We also note that ERISA plans, like contracts, are to be construed as a whole, see Hansen v. Continental Ins. Co., 940 F.2d 971, 981 (5th Cir.1991), and context colors the meaning of words. Empirical research has demonstrated that a summary not unlike this one can lead readers to conclude that benefits are for life. See James F. Stratman, Contract Disclaimers in ERISA Summary Plan Documents: A Deceptive Practice? 10 Indus.Rel.L.J. 350 (1988).
 
 
 21
 Of the arguments advanced, none persuades us that the amendment clause has only one meaning. For example, the defendants have asserted that American Can could have written: "The Plan may only be amended to conform to applicable changes in legislation." By the same logic, the retirees have argued that American Can could have written: "The Plan may be amended at any time." This argument shows only that the clause, if drafted differently, would have been unambiguous.
 
 
 22
 The defendants have also attacked the retirees' position because it interprets the clause as stating the obvious--that the company would amend the Plan if the law required it. ERISA requires a plan sponsor to warn participants of possible decreases in their benefits. See 29 U.S.C. § 1022. Thus, although the retirees' suggested meaning states the obvious, section 1022 explains the presence of the clause. Moreover, the defendants' suggested meaning would render the words "in conformity with" as stating the obvious--that any change would be according to law--and section 1022 would equally explain the obviousness of those words.
 
 
 23
 The defendants have also questioned the implication in the retirees' interpretation that legislation might result in a benefit reduction. But one can imagine legislation that might result in a reduction of benefits. For example, a tax on benefits would reduce them; nationalization of health care might eliminate private insurance altogether in an effort to contain costs.
 
 
 24
 Finally, the defendants have made much of evidence that indicates that American Can increased benefits on one occasion, with a slight increase in premiums from about $3 to $5 per month. We reject the defendants' argument that the company's past practice of changing benefits somehow renders the amendment clause unambiguous. A benefit increase does not necessarily contradict the retirees' position. The defendants ascribed to the retirees' position the most rigid interpretation--that the amendment clause prohibits all changes except those required by law. Any change, even an increase, would be inconsistent with that rigid interpretation. Even if we were to adopt that rigid interpretation, the evidence might only show that the increase violated the amendment clause and that it went unchallenged because it harmed neither the donor nor the donees. Common sense, however, does not warrant so rigid an interpretation.
 
 
 25
 Summary plan descriptions must warn employees of adversity. See 29 U.S.C. § 1022. Whether the clause reserved a limited or unlimited right, it addressed the right to reduce benefits. A lawyer reading the words "necessarily reserves the right to amend, modify or discontinue the Plan" might give the emphasized words their broadest meaning: enhance or reduce. It is unclear, however, why a company would reserve the "right" to enhance benefits. Neither ERISA nor common sense requires notice of future benefit enhancements. The average Plan participant, under the spell of common sense, would understand the clause to reserve either a limited or unlimited right to reduce benefits. An increase in benefits therefore sheds no light on the meaning of the clause. It harmonizes both with the defendants' position that the Plan could freely reduce benefits and with the retirees' position that the Plan could not reduce benefits at will. Moreover, a benefit increase must illuminate the entire plan, not just the equivocal amendment clause. In that regard, evidence of an increase would support the retirees' position that the Plan promised irreducible benefits.
 
 
 26
 A finding of benefit reductions, however, would show action consistent with the defendants' position that American Can had reserved the right to reduce or discontinue benefits at will. The district court, as the trier of fact, might reasonably infer that, because benefits had been reduced in the past, the Plan had not promised irreducible benefits. The defendants support their allegation of past reductions with a snippet of testimony, which culminates in the statement that the cost of benefits "changed by a matter of $1, a dollar and change a month in return for an offsetting increase in the protection, particularly on the catastrophic side." Dep. of J. Alexander, App. at 129-30. The testimony shows a cost increase that was minuscule in comparison to the one contested here, and which was accompanied by a benefit increase. According to the defendants' own submission, American Can explained the change as an increase in benefits, not a reduction, and the employees perceived it that way. On remand, it will be for the district court to determine if this evidence is sufficient to show that American Can always acted consistently with a reservation of authority to reduce benefits and increase premiums and the relevance thereof.
 
 B.
 
 27
 We further conclude that the amendment clause is ambiguous in light of Alday v. Container Corp. of America, 906 F.2d 660 (11th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991); Musto v. American General Corp., 861 F.2d 897 (6th Cir.1988), cert. denied, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); and Moore v. Metropolitan Life Ins. Co., 856 F.2d 488 (2d Cir.1988). In Alday, plan documents reserved the right to "terminate, suspend, withdraw, amend or modify the plan in whole or in part at any time." 906 F.2d at 662. In Musto, the insurance policy in question provided:
 
 
 28
 This Policy, or any insurance coverage hereunder, may be amended or discontinued at any time by an announcement duly published by the Company. The Company reserves the right to determine new premium contributions from time to time and at any time. Termination of this Policy, or any insurance coverage hereunder, or any amendments hereto shall not require the consent of any Employee or beneficiary, nor shall such action require individual notice to any such person. Only the President, a Vice-President, the Secretary or an Assistant Secretary has power on behalf of the Company to make or modify this contract of insurance.
 
 
 29
 861 F.2d at 901-02. In Moore, various summary plan descriptions had reserved, since 1915, the right to change the plan's terms "at any time." 856 F.2d at 490. In each case, the court determined that the clause had reserved the right to reduce benefits.
 
 
 30
 The American Can clause differs from those in Alday, Musto, and Moore. By way of example, only one of many summaries in Moore did not contain a reservation clause, and that summary referred prominently to the plan document itself. Moore, 856 F.2d at 490. In contrast, the American Can plan document does not exist, and there are merely three summaries, of which only two contain the clause. Also, the phrase at any time, which appears in the Alday, Musto and Moore documents, does not appear in the American Can documents. In short, the Alday, Musto and Moore plans used clauses more straightforward than the one we consider here.
 
 
 31
 In opining that the American Can clause was unambiguous, the district court equated it with two phrases from Musto and Moore. These two phrases, however, do not sufficiently resemble the American Can clause. A slight similarity does not warrant construing a different phrase to be unambiguous as a matter of law.
 
 
 32
 In Musto, one summary plan booklet warned that "since it is not possible to foresee the future, the Company must reserve the right to change or even discontinue these provisions if it becomes necessary." 861 F.2d at 904. Later booklets warned that "the Company does, as it always has, reserve the right to change the Plan and, if necessary, discontinue it." Id. In a footnote, the Musto court noted that, in light of the later booklets and the plan document, the earlier phrase, if it becomes necessary, did not limit the right to change the Plan. 861 F.2d at 906 n. 5. The court also hinted that the phrase, in its context, did not mean "to avoid bankruptcy." In contrast to the phrase in Musto, the word necessarily in the American Can clause cannot be construed in light of clearer booklets or the plan document, neither of which exists here. The dicta in Musto thus does not establish a legal meaning for the term necessarily as used in the American Can Clause.
 
 
 33
 In Moore, the plan booklets, under the heading "Change or Discontinuance of Plan," warned that the company could discontinue its plan at any time, with the proviso
 
 
 34
 that any change shall be subject to the approval of the Superintendent of Insurance of the State of New York.
 
 
 35
 856 F.2d at 490. The Moore proviso differs from the American Can clause. Thus, although the proviso might suggest a possible meaning for the American Can clause, it does not make the American Can clause legally unambiguous.
 
 C.
 
 36
 The district court granted the defendants' motion for summary judgment on the theory that an unqualified reservation of the right to reduce benefits was inconsistent with a promise of vested, lifetime benefits. Because the summary plan descriptions do not clearly reserve the right to reduce benefits, we will reverse the district court's grant of summary judgment.[1] We next address the question for resolution on remand.
 
 III.
 
 37
 In the first count of the complaint, the retirees claimed the Plan provides an entitlement, vesting on retirement, to lifetime benefits at a fixed cost. Although ERISA contains elaborate vesting requirements for pension plans, ERISA does not require automatic vesting of welfare benefits. Molnar v. Wibbelt, 789 F.2d 244, 250 (3d Cir.1986). A plan itself, however, may imply a vested benefit. See Internat'l Resources, Inc. v. New York Life Ins. Co., 950 F.2d 294, 301-02 (6th Cir.1991) ("[A] court may look to the parties' intent to determine when vesting should occur").
 
 
 38
 Because a plan document does not exist and because the summary plan descriptions are ambiguous, the district court, as the trier of fact, must determine whether the Plan provided lifetime benefits upon retirement. See Taylor v. Continental Group, 933 F.2d 1227, 1232 (3d Cir.1991) (interpretation of ambiguity is question of fact). In interpreting an ambiguous ERISA plan, a court may consider the intent of the plan's sponsor, the reasonable understanding of the beneficiaries, and past practice, among other things. Id., 933 F.2d at 1232-33. In this regard, we note that the retirees' affidavits and documents, if believed by the district court, are sufficient to show that the Plan promised lifetime irreducible benefits.
 
 
 39
 In support of their cross-motion for summary judgment, the retirees submitted affidavits and documents to prove that American Can and its employees understood that the Plan provided for lifetime benefits, vesting at retirement. William F. May, an employee of American Can for forty-two years and Chairman of its Board of Directors from 1965 to 1980, affirmed that the company intended to promise lifetime insurance to its retirees. He explained that American Can made these promises to recruit and retain employees despite salaries below the industry average, and also to induce acceptances of offers of early retirement. Jack McGoldrick, as an officer of the Corporate Communications Department who worked on the development of the summary plan descriptions, indicated that American Can intended only to reserve the necessary power to keep the Plan in conformity with applicable legislation.
 
 
 40
 Similar explanations of the company's intent and the employees' understanding were given by Judd H. Alexander, formerly one of the top executive officers and a member of the Annuity Board; by Sal J. Guidice, whose department trained employees to inform prospective retirees that their benefits, including medical insurance, were lifetime fixed-cost benefits; and by Lawrence Morrow and Eugene Ecker, former executives in the Human Resources Department.
 
 
 41
 In their official capacities, Alexander, Guidice and Morrow told employees that the insurance benefits were for life. "I specifically told employees," said Morrow, "that they should spend their careers at American Can because the reward for such service was the company's lifetime retirement program, including the medical insurance plan." Aff. of Lawrence Morrow, App. at 261. George Wagner, a manager, thought that medical benefits were not subject to discretionary termination or cutbacks. He represented the same to employees, and he expressly told them that they did not need to obtain back-up medical insurance, since the American Can program would protect a retiree and spouse for the remainder of their lives.
 
 
 42
 Additionally, a number of the affiants indicated that they relied on the promise of lifetime benefits vesting at retirement, either in deciding to remain with American Can or in accepting early retirement. Detrimental reliance is not an element of the retirees' cause of action, but it may show that the employees acted with the understanding that the Plan provided for lifetime medical benefits that could not be reduced.
 
 
 43
 Although the summary plan descriptions do not unambiguously promise lifetime benefits, they may be interpreted to make that promise in light of the evidence of the company's intent and employees' understanding, and in light of the duty of clarity that ERISA puts on a plan sponsor. See 29 U.S.C. § 1022.
 
 IV.
 
 44
 For the foregoing reasons, we will reverse the district court's judgment dismissing the complaint. We will remand for the district court's interpretation of the summary plan descriptions in light of all relevant evidence and for the district courts further consideration of the retirees' claims.
 
 
 
 *
 Honorable Louis H. Pollak of the United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Given that the amendment clauses are facially ambiguous, we need not address what extrinsic evidence, if any, the district court was bound to consider in determining whether the amendment clause was ambiguous. See Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 & n. 12 (3d Cir.1980):
 If a reasonable alternative is suggested, even though it may be alien to the judge's linguistic experience, objective evidence in support of that interpretation should be considered by the factfinder. See Corbin, Contracts § 542.
 619 F.2d at 1011 (emphasis in original; footnote omitted).