

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-28-1995

# In Re: Unisys Corp

Precedential or Non-Precedential:

Docket 94-1800

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"In Re: Unisys Corp" (1995). *1995 Decisions.* Paper 174.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/174

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 94–1800

—————

IN RE:  UNISYS CORP. RETIREE
MEDICAL BENEFIT "ERISA" LITIGATION

*Gerald E. Pickering, Fred Tonnies,
William Leonhardt, Evelyn Schmidt,
Dudley Keyes, David Kahl, Paul Wright,
Robert Wilt, Clay Bernichon, Edward Valle,
Robert B. Welsh, Solveig Tschann, Bernard
J. Jansen, Donald I. Klippenstein,
Frederick W. Hoppe, Ludson F. Worsham,
Edwin Marjala and Warren Hall, individually
and on behalf of all members of the Sperry
Class previously certified by the Court whose
claims have not been settled,
                          Appellants

*(Pursuant to F.R.A.P. 12(a))

—————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. MDL 969)

—————

Argued
May 4, 1995
Before:  MANSMANN, SCIRICA and McKEE, Circuit Judges.

(Filed   June 28, l995)

—————

Alan M. Sandals, Esquire
Berger & Montague
1622 Locust Street
Philadelphia, PA  19103

Joseph R. Roda, Esquire (Argued)
36 East King Street
301 Cipher Building
Lancaster, PA  17602

J. Dennis Faucher, Esquire
Miller, Faucher, Chertow,

Cafferty & Wexler
One Penn Square West
Suite 1801
Philadelphia, PA  19102

Seymour J. Mansfield, Esquire
Mansfield & Tanick
900 Second Avenue South
Suite 1560
Minneapolis, MN  55402

Sarah E. Siskind, Esquire
Davis, Miner, Barnhill & Galland
44 East Mifflin Street
Suite 803
Madison, WI  53703

   Counsel for Appellees
    Gerald E. Pickering, Fred Tonnies,
    William Leonhardt, Evelyn Schmidt,
    Dudley Keyes, David Kahl, Paul Wright,
    Robert Wilt, Clay Bernichon, Edward Valle,
    Robert B. Welsh, Solveig Tschann, Ludson F.
    Worsham, Edwin Marjala,  Warren J. Hall,
   individually and on behalf of all members of
    the Sperry Class previously certified by the
    Court whose claims have not been  settled

James F. Roegge, Esquire
Julie L. Levi, Esquire
Meagher & Geer
33 South Sixth Street
4200 Multifoods Tower
Minneapolis, MN  55402

   Counsel for Appellees
    Gerald E. Pickering, Fred Tonnies,
    William Leonhardt, Evelyn Schmidt,
    Dudley Keyes, David Kahl, Paul Wright,
    Robert Wilt, Clay Bernichon, Edward Valle,
    Robert B. Welsh, Solveig Tschann,
    Bernard J. Jansen, Donald I. Klippenstein,
    Frederick W. Hoppe

Joseph J. Costello, Esquire
Francis M. Milone Esquire (Argued)
Morgan, Lewis & Bockius
2000 One Logan Square
Philadelphia, PA  19103

Joseph A. Teklits
UNISYS Corporation
P.O. Box 500
M.S. C2NW 14
Blue Bell, PA  19424


Kevin P. Roddy, Esq.
Milberg, Weiss, Bershad, Hynes & Lerach
355 South Grand Avenue
Suite 4170
Los Angeles, CA 90071

Henry H. Rossbacher, Esq.
Rosbacher & Associates
445 South Figueroa St.,
Union Bank Plaza
24th Floor
Los Angeles, CA 90071

                    Counsel for Appellant
                    _____

                    OPINION OF THE COURT
                    _____


MANSMANN, Circuit Judge.

        This class action arises out of the termination of post-retirement medical benefit plans, sponsored by Unisys for retirees and disabled former employees of Unisys and its corporate predecessors, Sperry Corporation and Burroughs Corporation.  The retirees seek to recover post-retirement medical benefits under the terms of their welfare benefit plans and under the Employee Retirement Income Security Act's ("ERISA's") provisions for appropriate equitable relief.

We are asked to decide in this particular appeal[1] whether the district court erred in holding, on this breach of contract claim, that summary plan descriptions that used the terms "lifetime" or "for life" to describe the duration of medical benefits, while at the same time reserving the employer's right to modify or terminate at "any time" and "for any reason" the plans under which these benefits are provided, were unambiguous. We also address whether the district court erred in refusing to reinstate the retirees' estoppel claims upon which

---

[1]. This appeal concerns some of the claims of the Sperry regular retirees, and the claims of a sub-group of Sperry early retirees.

The appeals docketed at Nos. 94-1801, 94-1875, 94-1912 and 94-2216 concern the claims of the Unisys and Burroughs retirees, as well as the remaining claims of the Sperry retirees. In appeal No. 94-1801, the Unisys early retirees have appealed from an adverse judgment rendered after trial on their claims for breach of contract, breach of fiduciary duty and estoppel. The claims of the Burroughs early retirees and many of the claims of the Sperry early retirees were settled pursuant to a partial settlement agreement between Unisys and these retirees. In appeal No. 94-1875, Unisys has appealed from an order of the district court reinstating the Sperry retirees' claims for breach of fiduciary duty. In appeal No. 94-1912, the Burroughs and Unisys regular retirees have appealed from the district court's grant of summary judgment in favor of Unisys on their breach of contract and estoppel claims. In appeal No. 94-2166, a sub-group of Sperry retirees attempted to challenge the partial settlement between Unisys and the Sperry and Burroughs early retirees which did not include them.

On October 3, 1994 we granted the parties' joint motion to consolidate appeal Nos. 94-1800, 94-1801, 94-1875 and 94-1912 for purposes of filing a single joint appendix and for disposition. All of these appeals have now been resolved, either by our decisions in published opinions see Nos. 94-1800 and 94-1875, or by memorandum opinions rendered in Nos. 94-1801, 94-1912 and 94-2216.

Unisys had earlier been granted summary judgment.  We will affirm the judgment of the district court.

I.

In September of 1986, Sperry Corporation and Burroughs Corporation merged to form Unisys Corporation.  Prior to the merger, Sperry consisted of a number of business units or divisions.  Until 1984 each Sperry division maintained its own medical benefits program, with each described in a separate summary plan description.  In 1984, in an attempt to streamline the medical benefits plans and in response to rising medical costs, Sperry implemented Medflex, a corporate-wide medical benefits plan that applied to the entire Sperry Corporation.[2]  Medflex was applied to future retirees only; existing retirees continued to receive coverage under the pre-Medflex plans which applied when they retired.

Following the merger in 1986, Unisys continued the Medflex plan for active employees and for those who retired after its implementation but prior to April 2, 1989.  Unisys also continued all of the pre-Medflex plans for those who retired prior to Medflex's implementation.[3]  In 1989, Unisys effected the

_____

[2].    Medflex applied to all Sperry business units by January 1, 1984, with the exception of one sub-group of the Sperry Division, which commenced participation in Medflex on January 1, 1985.

[3].    Following the merger, Unisys maintained all of the separate medical benefit plans for its retirees -- approximately 75 plans, a situation described by one Unisys executive as a "royal administrative headache."  This abundance of plans was due primarily to Sperry's corporate structure which consisted of

consolidation of its retiree medical benefit plans when it created the Unisys Post-Retirement and Extended Disability Medical Plan to cover all employees who retired after April 1, 1989, most of whom were former Sperry and Burroughs employees.

On November 3, 1992, Unisys publicly announced that effective January 1, 1993, it was terminating all existing medical benefit plans and replacing all of the pre-existing medical plans with the new Unisys Post-Retirement and Extended Medical Disability Plan.  Under the new plan, retirees would be responsible for increasing levels of contributions until January 1, 1995, when they would have to pay the full cost of their premiums.  Thus, the new plan sharply contrasted with earlier plans, under the majority of which Unisys paid the entire premium for an individual's life and provided benefits for the individual's spouse as well.[4]

(..continued)
several business units or divisions, with each division having its own medical plan.  Further, the district court found that even in a single Sperry division, several plans often existed due to the company's practice of maintaining the plan under which an individual retired and implementing new plans prospectively only.

[4].     Unisys' decision to terminate the benefit plans under which it had provided coverage and to replace those plans with the new Unisys Post Retirement and Extended Disability Medical Plan was challenged in nine separate actions which the Judicial Panel on Multidistrict Litigation transferred to the Eastern District of Pennsylvania and consolidated for disposition pursuant to 28 U.S.C. § 1407.  On June 9, 1993, after determining that Unisys "acted on grounds generally applicable to the class," the district court certified the case as a class action pursuant to Fed. R. Civ. P.23(b)(2).  The class consists of approximately 21,000 former non-union employees of Sperry, Burroughs and Unisys.  The court certified three distinct classes:  Unisys retirees, Sperry retirees or Burroughs retirees.  The claims of each class were adjudicated separately.

The appellees in this case are former employees of Sperry Corporation (and their eligible dependents) who retired between 1969 and April 1, 1989, from Sperry Corporation or Unisys, Sperry's successor. Following Unisys' termination of their post-retirement medical benefit plans in late 1992, the retirees sought relief based on three theories: breach of contract, equitable estoppel, and breach of fiduciary duty. The Sperry retirees argued that Unisys' termination of their respective medical plans violated ERISA. They argued first that Unisys had denied them "vested" benefits in violation of 29 U.S.C. § 1132(a)(1)(B) because the summary plan descriptions ("SPDs") explaining their medical benefits contained the term "lifetime" benefits. Regarding their contract claims, the retirees relied on the explicit lifetime language in the plans, e.g., "when you retire, your medical benefit will be continued for the rest of your life", and on statements made by the company both orally and in writing to the same effect.[5]

(..continued)
The retirees asserted two sets of claims: general claims on behalf of all retirees, and separate claims on behalf of "early" retirees who retired under various early retirement incentive programs offered by the company throughout the 1980s. Many of the claims of the early retirees were settled after trial, but not the claims of a subgroup of Sperry early retirees denominated as VRIFs, who are part of this appeal. See also appeal No. 94-2166.

[5]. A subgroup of Sperry retirees who retired pursuant to a voluntary reduction in force asserted a separate contract claim of their own that the company had induced them to retire earlier than they would have done by representing that if they retired, they would preserve the post-retirement coverage in effect under then current plans. These "VRIF" retirees argued that they accepted Unisys' "offer" by retiring early, thus forming separate bilateral contracts.

The Medflex SPD is illustrative.  A Sperry employee who retired during the period January 1, 1984 through April 1, 1989 received medical benefits under this plan.  The SPD for Medflex is set forth in a booklet titled, "Your Company and You."  Included in this plan was the following description of retiree medical benefit coverage:

> If you're eligible, Medical Plan benefits continue without cost after you terminate active employment.  Benefits also may continue on a contributory basis for your eligible dependents who are covered when your employment terminated. . . .  Coverage <u>continues for you for life</u> and for your dependents while they remain eligible provided you don't stop the contributions for their coverage.  After your death, your eligible dependents may continue coverage by making the require contributions.  Their coverage continues until your spouse dies or remarries.

(A 2227) (emphasis added).

The retirees argued alternatively, that even if the court were to find that "lifetime" is not synonymous with "vested", the evidence established that Unisys intended that a reservation of rights clause in the plan, enabling the company to change the plan at will, only applied to active employees and not to retirees; thus, the company never intended to reserve its right to terminate the plans as far as retirees are concerned.  In addition, the retirees contended that Unisys breached its fiduciary duty by systematically misrepresenting the plans and

should be equitably estopped from exercising any right to terminate their benefits.[6]

Unisys responded that it had indeed reserved the right to terminate the retirees' medical plans due to the "reservation of rights clauses" or "RORs" located in other sections of the plans.  Typical of these clauses is the one set forth in the SPD describing the Medflex plan.  The Medflex SPD booklet, "Your Company and You," was distributed to all employees and contained the following reservation of rights clause:
Plan Continuation

> The Company expects to continue the Plans, but reserves the right to change or end them at any time.  The Company's decision to change or end the Plan may be due to changes in federal or state laws governing welfare or retirement benefits, the requirements of the IRS or ERISA, the provisions of a contract or policy involving an insurance company or any other reason . . . .

(A 2750) (emphasis added).

In addition to the provisions set forth in the summary plan descriptions, information about retiree medical benefits was also conveyed to the Sperry retirees through various informal oral and written communications.  As in the summary plan descriptions, the duration of medical benefits was described as being "for life" or for the "lifetime" of the retiree and spouse.

---

[6].    The Sperry retirees' breach of fiduciary claim is not implicated in this appeal.  It is the subject of the appeal docketed at 94-1875.

Sperry did not include in these informal communications a reference to the reservation of rights clause.

Notwithstanding these communications, Unisys denied having created vested medical benefits through its use of the words "lifetime" or "for life", and early in the litigation filed a motion for summary judgment seeking dismissal of all of the regular retirees' claims based on the unambiguous reservation of rights clauses in the plans. Although the district court granted Unisys' motion on the retirees' breach of fiduciary duty and estoppel claims, it denied summary judgment on the retirees' contract or plan-based claim. The district court initially found that the internal inconsistency between the lifetime promises and the reservations of rights clauses made the plans ambiguous and thus a trial on the extrinsic evidence was necessary to resolve the ambiguity. In re Unisys, 837 F. Supp. 670, 679 (E.D. Pa. 1993). After trial,[7] the district court reversed its position on both the contract and breach of fiduciary duty claims, entering judgment against the Sperry regular and VRIF retirees on their contract claims but reinstating the Sperry retirees' breach of fiduciary claim.[8]

_____

[7]. Although the retirees have also appealed from the district court's order striking their demand for a jury trial, we need not address this issue on appeal given our disposition of the contract ambiguity issue.

[8]. On October 13, 1993, the district court granted summary judgment in favor of Unisys on the Sperry retirees' claim that Unisys had breached its fiduciary duty. In re Unisys, 837 F. Supp. at 670, 679-80. At trial, the Sperry retirees moved for reconsideration of their breach of fiduciary duty claim in light of our decision, rendered during trial, in Bixler v. Central Pa. Teamsters Health and Welfare Fund, in which we held that a direct

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

### A.

ERISA is a comprehensive statute enacted "to promote the interests of employees and their beneficiaries in employee benefit plans," Shaw v. Delta Airlines, Inc., 463 U.S. 85, 90 (1983), and "to protect contractually defined benefits," Massachusetts Mutual Life Ins. v. Russell, 473 U.S. 134, 148 (1985). See also 29 U.S.C. § 1001. ERISA recognizes two types of employee benefit plans: pension plans and welfare plans. Deibler v. Local Union 23, 973 F.2d 206, 209 (3d Cir. 1992). In general, welfare plans provide "medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1). Pension plans provide: (i) retirement income to employees or (ii) result in a deferral of income by employees for periods extending to the termination of covered employment or beyond. 29 U.S.C. § 1002(2)(A). Both Unisys and the retirees agree that the retiree medical benefit plans at issue in this case are welfare benefit plans under 29 U.S.C. § 1002(1).

(..continued)
action for breach of fiduciary duty is available under section 1132(a)(3)(B). 12 F.3d 1292 (3d Cir. 1994). Relying on Bixler, the district court granted this motion and reinstated the Sperry retirees' claims for breach of fiduciary duty.

The implications of this are significant. Although ERISA contains elaborate vesting requirements for pension plans, ERISA does not require automatic vesting of welfare benefit plans. Alexander v. Primerica Holdings, Inc., 967 F.2d 90, 95 (3d Cir. 1992); Smith v. Hartford Ins. Co., 6 F.3d at 136 (3d Cir. 1994). Congress did not impose vesting requirements on welfare plans because it determined that "[t]o require the vesting of those ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income." Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1160 (3d Cir. 1990) (citing H.Rep. No. 807, 93rd Congr., 2d Sess. 60, reprinted in 1974 U.S. Code Cong. & Admin. News 4670, 4726). In rejecting the automatic vesting of welfare plans, Congress evidenced its recognition of the need for flexibility with regard to an employer's right to change medical plans. As the Court of Appeals for the Second Circuit observed:

> Automatic vesting was rejected because the costs of such plans are subject to fluctuating and unpredictable variables. Actuarial decisions concerning fixed annuities are based on fairly stable data, and vesting is appropriate. In contrast, medical insurance must take account of inflation, changes in medical practice and technology, and increases in the cost of treatment independent of inflation. These unstable variables prevent accurate prediction of future needs and costs.

Moore v. Metropolitan Life Ins. Co., 856 F.2d 488, 492 (2d Cir. 1988). See also 29 U.S.C. § 1051.

Nonetheless, in some situations, a welfare plan may provide a vested benefit. Alexander, supra, 967 F.2d at 95; Schoonejongen v. Curtiss-Wright, 18 F.3d 1034, 1042 (3d Cir. 1994), rev'd and remanded on other grounds, ___ U.S. ___, 115 S. Ct. 1223 (1995). The plan participant bears the burden of proving, by a preponderance of the evidence, that the employer intended the welfare benefits to be vested. Howe v. Varity Corp., 896 F.2d 1107 (8th Cir. 1990).

ERISA's framework ensures that employee benefit plans be governed by written documents and summary plans descriptions, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits. See, e.g., Hozier v. Midwest Fasteners, Inc., supra; Confer v. Custom Engineering Co., 952 F.2d 41 (3d Cir. 1991); Hamilton v. Air Jamaica, Ltd., 945 F.2d 74 (3d Cir. 1991), cert. denied, 112 S. Ct. 1479 (1992); 29 U.S.C. § 1022(a)(1). Accordingly, any retiree's right to lifetime medical benefits under a plan can only be found if it is established by the terms of the ERISA-governed employee benefit plan.

A court must examine the plan documents. Boyer v. Douglas Components Corp., 986 F.2d 999 (6th Cir. 1993). Extra-ERISA commitments, such as the right to receive free lifetime coverage, must be found in the plan documents and stated in clear and express language. Wise v. El Paso Natural Gas, 986 F.2d 929 (5th Cir.), cert. denied, 114 S. Ct. 196 (1993). See also Alday v. Container Corp. of America, 906 F.2d 660, 665 (11th Cir. 1990) ("[A]ny retiree's right to lifetime medical benefits at a

particular cost can only be found if it is established under the terms of the Erisa-governed benefit plan document"), cert. denied, 498 U.S. 1026 (1991). The written terms of the plan documents control and cannot be modified or superseded by the employer's oral undertakings. See Hozier v. Midwest Fasteners, Inc., 908 F.2d at 1163 (citing Musto v. American General Corp., 861 F.2d 897, 910 (6th Cir. 1988), cert. denied, 490 U.S. 1020 (1989) (the unambiguous written provisions of a plan must control, and extrinsic evidence may not be introduced to vary the express terms of a plan)) and Gordon v. Barnes Pumps Inc., 999 F.2d 133, 137 (6th Cir. 1993) (a basic principle of ERISA is that a plan may not be modified or superseded by oral statements or other extrinsic evidence).

To determine whether Sperry intended to confer vested benefits upon its retirees in this case, we must analyze the provisions of the retiree medical benefit plans at issue. Unisys and the Sperry retirees agree that the Sperry summary plan descriptions are the controlling documents that we must interpret. The threshold issue in this case, whether the Sperry plans were ambiguous, is a question of law. Taylor v. Continental Group, 933 F.2d 1227, 1232 (3d Cir. 1991). We turn now to the exact language of the plans in question and apply these principles of law.


B.

Although Sperry maintained many different medical benefit plans for its separate divisions or business groups, all

of these plans conveyed the same message:  that post-retirement medical benefits would be provided for life.  There were slight variations in the exact language utilized to convey this message. For instance, the Sperry Univac plan contained the following language:

> When you retire . . . the comprehensive
> medical expense benefits then in force for
> you and your eligible dependents under this
> plan will be continued for the rest of your
> life.

SPD for Sperry Univac (A 2232).  Another plan provided: ". . . coverage continues for you for life and for your dependents while they remain eligible . . . ."  Sperry Medflex SPD (A 2749).

Unisys offered the same defense for all Sperry divisions, namely that this lifetime language was subject to reservation of rights clauses located elsewhere in the plans. Although some reservation of rights clauses were more detailed than others, each clause provided that the company could terminate the plan "at any time" and "for any . . . reason."  See Sperry Medflex Plan, A 2750.  Based on these provisions, the retirees asserted that the retiree medical benefit plans were ambiguous and that the ambiguity arose not merely from the reservation of rights clauses themselves, but also from the inconsistency between the reservation of rights clauses and the plan's lifetime promises.  According to the retirees, the plans were ambiguous because they were susceptible to either of two interpretations:  the retirees' interpretation that the lifetime language limited the scope of the reservations of rights, or the

company's interpretation that the reservation of rights limited the lifetime language. If the court finds "but one reasonable interpretation, then a fortiori there can be no ambiguity." Curcio v. John Hancock Life Ins. Co., 33 F.3d 226, 231 (3d Cir. 1994). However, if the language is susceptible to more than one reasonable interpretation, then it will be found to be ambiguous. Id.[9]

In Schoonejongen v. Curtiss-Wright, supra, we reviewed summary plan descriptions which stated in varying forms that health insurance benefits would terminate "upon death" or when "you cease to be a member of a class eligible for insurance . . . [or] upon discontinuance of the group policy." 18 F.2d at 1036-37. Some years later, Curtiss-Wright amended the language in its summary plan description to provide that "[c]overage under this plan will cease for retirees and their dependents upon the termination of business operations of the facility from which they retired." Id. at 1037. The affected retirees argued that this reservation on its face referred only to employees and not to retirees. Because the reservation did not unambiguously reserve the right to terminate retiree benefits, the district court held a trial to resolve the ambiguity. 18 F.3d at 1041.

---

[9]. Although the district court originally agreed, at the summary judgment stage, that the presence of lifetime language and the reservation of the right to end the plans at any time made the plans "internally inconsistent," and therefore, ambiguous, it subsequently reversed this position in light of our decision in Curtiss-Wright, 18 F.2d at 1042, which the court interpreted as suggesting that "there is nothing inconsistent about having lifetime language and a ROR in the same documents."

Based on the extrinsic evidence, the district court found that the clause did apply to retirees. We affirmed the district court's holding that Curtiss-Wright had reserved the right to terminate retiree benefits, but held that Curtiss-Wright lacked a formal amendment procedure in violation of section 402(b)(3) of ERISA, 29 U.S.C. § 1102(b)(3), and therefore the amendment to the plan was invalid. We responded to the retirees' argument that the plan's description of the duration of benefits as ceasing "upon death" created vested benefits:

> It seems to us, however that our conclusion [that Curtiss-Wright had a reserved right to amend] is a complete answer to this argument. Even if the plan contained unambiguous assurances that all retirees would have health insurance benefits for so long as Curtiss-Wright maintained a post-retirement health insurance program, the general reserved right to amend the terms of the plan in whole or in part would render the right of any retiree or group of retirees terminable by the adoption of a legally effective amendment.

Curtiss-Wright, 18 F.3d at 1042 (emphasis added). Although the Supreme Court reversed our conclusion that a formal amendment procedure was lacking under section 402(b)(3) of ERISA, the Court's decision is consistent with our conclusion that Curtiss-Wright had expressly reserved the right to amend its plan to effect a termination of benefits under the plan, as well as our conclusion that "an important and proper purpose of reserving a general right to amend is to permit the conditioning or cessation of any participant's benefits, not vested by virtue of the

mandate of ERISA, in ways not originally foreseen in order to meet unanticipated changes of circumstance." Id.[10]

We agree with the district court that the fact that the Sperry plans used terms such as "lifetime" or "for life" to describe the duration of retiree medical benefits, while at the same time expressly reserving the company's right to terminate the plans under which those benefits were provided, did not render the plans "internally inconsistent" and therefore ambiguous here.[11] An employer who promises lifetime medical benefits, while at the same time reserving the right to amend the plan under which those benefits were provided, has informed plan

_____

[10]. In Curtiss-Wright, ___ U.S. ___, 115 S. Ct. 1223 (1995), the issue of enforcing a reservation of rights clause notwithstanding "lifetime" assurances was not before the Supreme Court.

[11]. We do not hold that a reservation of rights will always prevail over a promise of benefits. Due to the abundance of ERISA plans and the differing benefits these plans provide, each case must be considered fact specific and the court must make its determination of the benefits provided based on the language of the particular plan it has been called upon to review.

For instance, in Curtiss-Wright, supra, the district court required extrinsic evidence in order to determine that the reservation clause in that case "was a general right to amend any or all" provisions of the plan. 18 F.3d at 1041, 1042 n.6. Thus, we held there that the reservation of rights clause overcame or "trumped" the promise of lifetime benefits.

Thus, Curtiss-Wright contemplated situations in which a reservation of rights in the plan documents are ambiguous. Where, as here, however, the reservation of rights is broad and unequivocal, it will prevail over a promise of lifetime benefits. Thus we agree with the district court's conclusion that the presence of lifetime language and the reservation of rights clauses here did not necessarily render the Sperry retiree medical benefit plans ambiguous.

participants of the time period during which they will be eligible to receive benefits provided the plan continues to exist. In this case, the Sperry retirees' eligibility for benefits was qualified because it was subject to Unisys' reserved right to terminate the plan under which those benefits were provided.[12]

Other courts have reached the same conclusion, recognizing that an employer can qualify the provision of "lifetime" benefits by reserving the right to terminate the plan under which those benefits are provided. Thus, in DeGeare v. Alpha Portland Indus., Inc., 652 F. Supp. 946 (E.D. Mo. 1986), aff'd, 837 F.2d 812 (8th Cir. 1988), vacated and remanded on other grounds, 489 U.S. 1049 (1989), the court found that seemingly inconsistent provisions, such as those permitting modification of the plan and those indicating that benefits last for life, must be construed to be harmonious. The court specifically found "harmonious and reasonable the interpretation

_____

[12]. The Sperry retirees argued that "the Curtiss-Wright panel did not consider the specific issue of whether an unqualified statement of lifetime benefits can limit the scope of a ROR." They maintain that the promise of lifetime benefits in Curtiss-Wright was expressly qualified by the phrase "so long as CW maintained a post-retirement health insurance program." See 18 F.3d at 1042. Here they suggest that the promise of lifetime benefits were, in contrast, completely unqualified. See A 2276. Thus, the Sperry retirees argue that the Curtiss-Wright case is distinguishable from theirs.

We disagree. Here, too, the promise made to retirees was a qualified one: the promise that retiree medical benefits were for life provided the company chose not to terminate the plans, pursuant to clauses which preserved the company's right to end them at any time or for any reason.

of [the employer] of the written documents to provide lifetime benefits subject to [the employer's] reserved right to amend." 652 F. Supp. at 961. See also Anderson v. Alpha Portland Indus., Inc., 836 F.2d 1512, 1518 (8th Cir. 1988), cert. denied, 489 U.S. 1051 (1989) (plaintiffs did not meet their burden of proving vested welfare benefits where an employer promised to provide welfare benefits "until death of retiree" where the employer had expressly reserved the right to terminate or amend the plan); Alday v. Container Corp. of America, 906 F.2d 660 (11th Cir. 1990), cert. denied, 498 U.S. 1026 (1991) (where summary plan description also clearly provided that retiree health insurance could be terminated or modified, terms of description were controlling); Gable v. Sweetheart Cup Co., Inc., 35 F.3d 851, 856 (4th Cir. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1442 (1995) (company's express reservation of its right to modify or terminate the participants' benefits is plainly inconsistent with any alleged intent to vest those benefits).

Here Sperry, and later Unisys, stated clearly and unequivocally in their summary plan descriptions that the company reserved the right to "change or end [the plans]" "at any time" and for "any . . . reason." Due to this broad and unambiguous language, we hold that the district court did not err when it concluded that the Sperry retiree medical benefit plans were not internally inconsistent because they contained "lifetime" language but also reserved the right to terminate benefits at any time.

C.

Notwithstanding its legal conclusion based on Curtiss-Wright that the Sperry plans unambiguously reserved Unisys' right to terminate its retiree medical benefit plans, the district court analyzed the extrinsic evidence in order to determine whether the company intended the reservation of rights to apply to the retirees' medical benefits.[13]  Given the retirees' concerns that Curtiss-Wright did not foreclose the inquiry into extrinsic evidence, and because a trial had already been held in the case, the district court made a factual determination that the reservation of rights clause was intended to apply to the retirees' medical benefits, as well as a legal determination that the retirees had not sustained their burden of proving that the employer intended to vest retiree benefits.

The district court analyzed, first, the extrinsic evidence with respect to the intent of the plan sponsor, Unisys. Although the retirees argued that when the company used the term "lifetime," its true intent was to vest benefits, the district court found that the use of the word "lifetime" did not manifest an intent on the part of the plan sponsor to create "vested" benefits, because the evidence did not support this argument. The district court concluded that because the company had used

---

[13].    In Alexander v. Primerica, 967 F.2d at 93, we held that where there is an ambiguous ERISA plan, a court may consider, inter alia, the intent of the plan's sponsor, the reasonable understanding of the beneficiaries, and past practice in interpreting the plan.  Accordingly, the district court heard the retirees' evidence presented on each of these subjects.

the word "vested" in its medical plan for its top level Sperry executives, but not in the rank and file plans, the company must have intended not to vest the rank and file benefits. Rather, as the language of the executive plan revealed, when the company wanted to create vested benefits, it knew how to do so.[14]

The district court also found that the retirees' assertion that the reservation of rights, which did not facially distinguish between actives and retirees, applied only to actives was not supported by a preponderance of the evidence. (A 2278-79). While the court found that the company had "locked in" retirees' benefits in practice in the past, it was "not persuaded" that the company had embraced the "active/retiree" distinction as a matter of actual policy due to the fact that not a single document corroborated the testimony that an active/retiree distinction was in force; the distinction was not incorporated into the reservation of rights or summary plan descriptions or reduced to writing as an official policy. (A 2278-80). The district court found significant the facts that the alleged policy of restricting the RORs to active employees had never been formally discussed by the Board of Directors, and that a board resolution did not exist confirming the creation of this policy. Id. We agree with the district court that all of

---

[14]. The district court further found that the retirees had conceded, throughout trial, that an active employee's benefits could always be amended or terminated even though lifetime language was similarly used to describe that benefit. This concession suggested to the court that the retirees implicitly recognized that "lifetime" was not synonymous with "vested." (A 2278).

these factors militate against the idea that Unisys intended to restrict the application of the RORs to active employees.

Numerous retirees testified at trial that they understood that their benefits could not be reduced after retirement. Indeed, the district court found that there was "no question that the defendant routinely spoke of the medical benefits as continuing `for life.'" (A 2281). The district court specifically found that "this message was conveyed time and time again through informal communications that were sent out to retirees, and by oral statements that were made to these individuals both at private exist interviews and in group retirement sessions. Id. Nonetheless, the district court concluded that the retirees' reasonable understanding of their benefits must be limited to the reasonable understanding of the summary plan descriptions or plan documents, due to our strong precedent which precludes informal amendments to ERISA benefit plans. See, e.g., Hozier v. Midwest Fasteners, Inc., 908 F.2d at 1164; Haberen v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Program, 24 F.3d 1491 (3d Cir. 1994) (and cases cited therein).

Finally, the retirees' submitted evidence of past practice which demonstrated that Sperry had never reduced retiree medical benefits prior to this litigation. For example, when the Medflex plan was implemented, it applied to future retirees only. The retirees argued that this evidence established the existence of a policy pursuant to which benefits were "locked-in" upon retirement. The district court found that "merely because the

company had never chosen to exercise its reservations of rights prior to this litigation, did not mean that the company had waived its right to terminate the plans pursuant to these broad and unequivocal reservation of rights clauses."  (A 2283) (citing Alexander, 967 F.2d at 93 (rejecting the defendant's argument that the company's past practice of changing benefits rendered the amendment clause unambiguous); and Howe v. Varity Corp., 896 F.2d at 1116 ("merely because defendants chose to exempt retirees from plan changes in the past does not mean that defendants considered themselves forever bound to do so")).

Because the record before us firmly supports all of these findings, we cannot say that they are clearly erroneous.[15] Therefore, the district court did not err in concluding that the reservation of rights applied to the Sperry retirees' medical benefits and that the retirees' medical benefits were not intended by the company to be vested based upon this evidence.[16]

---

[15].     We do not understand the Sperry retirees to dispute any of the findings of fact upon which the district court relied in concluding that the alleged policy of applying the reservation of rights clause only to active employees was not supported by the evidence or the court's conclusion that the retiree medical benefits were not vested.  Rather, the retirees dispute the inferences from or the weight accorded these findings.

[16].     We reject the Sperry retirees' argument that the district court erred when it analyzed the extrinsic evidence because the court gave "too much weight to the subjective intentions of some company executives that were not disclosed to the employees, while ignoring the uncontradicted evidence of what the company said in explaining the plans to its employees, how the company applied the plans in practice and what the company knew its employees understood the plans to mean."  (Appellants' brief at p. 37).

III.

The Sperry retirees additionally contend that the district court erred in failing to sustain the separate contract claims of the "early retirees" or "VRIF" ("Voluntary Reduction in Force") retirees. The VRIFs asserted a claim separate from that of the regular retirees: that the company offered them certain benefits to induce them to retire which they accepted by retiring earlier than they would have. They contend that this offer and their acceptance formed a binding contract, independent of the contract rights asserted by the other retirees founded upon the basic plans. See Sprague v. General Motors Corp., 768 F. Supp. 605 (E.D. Mich. 1991).[17]

(..continued)

In Taylor v. Continental Group, 933 F.2d 1227, 1233 (3d Cir. 1991), we recognized that non-bargained ERISA plans (in that case, severance plans) raise special interpretational problems. To the extent that the retirees relied on extrinsic evidence of "what the company said in explaining the plans to its employees," and "how the plans were applied in practice," this evidence cannot be used to contradict the unambiguous written terms of an ERISA plan. Reliance on this evidence conflicts with Congress' intent that plan documents and SPDs exclusively govern an employer's obligations with respect to an ERISA plan. Thus, the district court did not err in its analysis of this extrinsic evidence here.

Further, while the informal statements made by the company that the benefits would continue for "life" do not alter the contractual analysis, as the district court found, "given the consistency and frequency that such communications were made, they would appear to support the retirees' other claims, such as their BOFD [Breach of Fiduciary Duty] claim." (A 2282). See appeal No. 94-1875.

[17]. The district court rejected this claim because the court found that the VRIF retirees were in no different position with respect to the contract claim than the other retirees:

Although it is true that the VRIFs retired early, foregoing future salary and pension accruals in order to secure the retiree medical benefits under their existing plans, the plans pursuant to which the VRIFs received retiree medical benefits contained clear and unequivocal reservation of rights clauses that permitted the company to end the plans at any time. See, e.g., the 1988 VRIF offering document advising the prospective participant of the entitlement to "coverage under the Post-Retirement Medical Plan in effect at the time your first [pension] check becomes payable." (A 4395). Medflex, the plan pursuant to which the VRIF retiree medical coverage was to be provided, contained an unambiguous reservation of rights clause.[18] (A 3011). While the VRIFs point out that the offering

(..continued)

> . . . [F]ollowing closing arguments, plaintiffs made a belated request in an attempt to distinguish a small group of class members from the class of Sperry regular retirees. These were individuals who retired under a voluntary reduction in force program ("VRIF"), not a VERIP. (See Supplemental Briefs, filed May 27, 1994.) The court allowed the parties to take some sample depositions and to brief the issue, in order to discover whether this small group did have any "special" claims. The court, however, finds that the VRIF individuals are in no different position than any of the other Sperry plaintiffs. Rather, any differences that do exist only go to bolster their [breach of fiduciary duty] claim.

(A 2264 n. 54).

[18]. Those employees who retired pursuant to a 1984 VRIF were likewise eligible to receive only those medical benefits under "the current health insurance plans" whose SPDs contained unambiguous RORs. (A 3029).

materials for their incentive plans promised the incentive benefits without any reference to a reserved right by the company to amend or terminate the plans, we find that this is not dispositive of their claim because the benefits which the VRIFs were to receive were described in summary plan descriptions containing unambiguous RORs. Consequently, the district court did not err in rejecting the VRIFs' separate bilateral contract claim.

IV.

We turn to the retirees' final argument that the district court erred in concluding that the estoppel claims of all of the regular retirees failed as a matter of law and erred in refusing to reconsider its grant of summary judgment on that claim. In re Unisys, 837 F. Supp. 670, 680-81 (E.D. Pa. 1993).

An ERISA beneficiary may recover benefits under an equitable estoppel theory upon establishing a material misrepresentation, reasonable and detrimental reliance upon the representation, and extraordinary circumstances. Curcio v. John Hancock Mutual Life Insurance Co., supra, 33 F.3d at 235; Smith v. Hartford Ins. Croup, 6 F.3d 131, 137 (3d Cir. 1993).[19] The retirees contend that they can establish these elements.[20]

_____

[19]. We reject Unisys' threshold argument that an estoppel claim is not cognizable under ERISA after the Supreme Court's decision in Mertens v. Hewitt Assoc., ___ U.S. ___, 113 S. Ct. 2063 (1993). We have recently reaffirmed the viability of this claim by our decisions in Curcio, supra, and Smith, supra.

[20]. Regarding the requirement of a material misrepresentation, the district court found that the company had

While we acknowledge that many retirees may have relied to their detriment on their interpretation of the summary plan descriptions as promising vested or lifetime benefits, we nonetheless must reject their estoppel claim.  Due to the unambiguous reservation of rights clauses in the summary plan descriptions by which Unisys could terminate its retiree medical benefit plans, the regular retirees cannot establish "reasonable" detrimental reliance based on an interpretation that the SPDs promised vested benefits.  The retirees' interpretation of the plans as providing lifetime benefits is not reasonable as a matter of law because it cannot be reconciled with the unqualified reservation of rights clauses in the plans.

Our sister courts of appeals have also rejected estoppel claims because of the presence of unambiguous reservation of rights clauses on the basis that a participant's reliance on employer representations regarding benefits may never be "reasonable" where the participant is in possession of a written document notifying him of the conditional nature of such benefits.  See, e.g., Gordon v. Barnes Pumps, Inc., 999 F.2d 133, 137 (6th Cir. 1993) ("[a]ll plan participants knew or should have

(..continued)
misinformed the retirees regarding the duration of their medical benefits coverage and that this misrepresentation was material. Indeed, the district court found that the company engaged in a "systematic campaign of confusion" which led employees to believe that their benefits were to continue for life.  The retirees contend that the record clearly establishes that many of the retirees, including the early retirees or "VRIFs", relied to their detriment on the company's misrepresentations because many employees accelerated their retirement and gave up salary and pension accruals they would have gained if they had continued to work.

known from the express terms of the Pullman plan that benefits could be altered at any time"). Accord Alday v. Container Corp. of America, 906 F.2d 666 (11th Cir. 1990) (promissory estoppel did not bar employer from modifying terms of retiree medical insurance plans despite participant's claim that employer induced him into believing that plan's terms would not change; plan unambiguously stated that the employer reserved the right to modify or terminate the plan), cert. denied, 498 U.S. 1026 (1991).

While our decisions have not required an express finding of plan ambiguity as an element for establishing an estoppel claim, we have required that reliance be reasonable. Because our decisions require that any detrimental reliance on plan language also be "reasonable," our finding that the RORs are unambiguous undercuts the reasonableness of any detrimental reliance by the retirees. Accordingly, we hold that the district court did not err in concluding, on summary judgment, that the retirees' estoppel claim failed as a matter of law.

V.

For the foregoing reasons, we will affirm the judgment of the district court.