Moses MOORE, etc., Plaintiff(s),

v.

ROHM & HAAS CO., et al., Defendant(s).

No. 5:03 CV 1342.

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 1, 2007.

John E. Stember, Stember Feinstein, Pittsburgh, PA, Pamina G. Ewing, Stember Feinstein, Pittsburgh, PA, Stephen M. Pincus, Stember Feinstein, Pittsburgh, PA, William T. Payne, Pittsburgh, PA, Robert W. Lowrey, ICWUC/UFCW Legal Department, Akron, OH, for Plaintiffs.

Arthur B. Smith, Jr., Robert P. Casey, Carol A. Poplawski, Ogletree Deakins Nash Smoak & Stewart, Chicago, IL, Christopher J. Newman, Henderson Covington Messenger Newman Thomas, Youngstown, OH, Peyton Lacy, Jr., Ogletree Deakins Nash Smoak & Stewart, Birmingham, AL, Dennis O. Wilson, Rohm & Haas Co., Philadelphia, PA, for Defendants.

### MEMORANDUM OPINION AND ORDER

DOWD, District Judge.

Before the Court is the question, raised *sua sponte*, as to whether the Complaint, as amended (Doc. No. 113), is really several separate lawsuits rolled into one. The legal issue is whether under, 28 U.S.C. § 1404(a) and/or Fed.R.Civ.P. 20, parts of this lawsuit should be either dismissed without prejudice or transferred to other federal district courts.

At the Court's direction, the parties have filed briefs (which have been supplemented, with leave). These include: Plaintiffs' Brief (Doc. No. 124, supplemented by Doc. No. 127); and Defendants' Brief (Doc. No. 118, supplemented by Doc. No. 130, and supported by Affidavits, Doc. Nos. 119, 120, 121). The legal question raised by the Court is now at issue and is decided herein.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On March 1, 2004, this case was transferred to the docket of the undersigned after another branch of this court recused. At the time, the case had already been pending since July 9, 2003. After the Court issued an order setting a discovery deadline and a briefing schedule for class certification, counsel sought to significantly extend these deadlines. The Court declined to do so, issuing an order containing several deadlines and directives. (*See* Doc. No. 33). Counsel then sought further clarification, prompting the Court to schedule a status conference for April 28, 2004.

During that status conference, as memorialized by an order issued on April 29, 2004 (*see* Doc. No. 38), the Court *sua sponte* indicated that, prior to deciding any class certification issues, it wanted the following question resolved: "Why should this Court keep in the lawsuit any plaintiff who does not reside in the Northern District of Ohio?" Although that particular phrasing of the question does not so indicate, the primary concern of this Court was twofold: (1) forum shopping by parties;[1] and (2) improper joinder of several

---

**1.** One fact strongly suggests forum-shopping in this case, namely, that several of the parties who do not reside within the boundaries and jurisdiction of the Sixth Circuit Court of Appeals would, arguably, not enjoy a particular inference, known as the "Yard–Man inference" if they had to bring their cases in other jurisdictions. *See International Union, etc. v. Yard–Man, Inc.,* 716 F.2d 1476, 1482 (6th Cir.1983) ("when the parties contract for benefits which accrue upon achievement of retiree status, there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree"), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984); *see also McCoy v. Meridian Automotive Systems, Inc.,* 390 F.3d 417 (6th Cir.2004); *Maurer v. Joy Technologies, Inc.,* 212 F.3d 907 (6th Cir.2000).

This inference has been rejected by several other circuits. *See, e.g., International Union, etc. v. Skinner Engine Co.,* 188 F.3d 130, 140 (3d Cir.1999) (stating "[w]e cannot agree with *Yard–Man* and its progeny that there exists a presumption of lifetime benefits in the context

lawsuits into one.[2] The Court directed briefs to be filed by the plaintiffs by May 14, 2004 and by the defendants by May 28, 2004.

Before this briefing occurred and with the Court's encouragement, the parties indicated a willingness to engage in alternative dispute resolution. By order dated May 12, 2004, all proceedings were stayed to allowed the mediation to occur.

By notice of the ADR Administrator on July 26, 2004, the Court was informed that mediation had failed. The mediator had, however, suggested another mediation session. (*See* Doc. Nos. 57, 58). While the mediation continued, the parties briefed and the Court decided the issue it had raised *sua sponte*. By order dated March 1, 2005, the Court dismissed the case without prejudice, concluding that it should retain jurisdiction only over plaintiffs who resided in Ohio and/or worked at defendants' plants in Ohio, but that, because the various claims were so intertwined, it would be necessary for plaintiffs to re-file in the appropriate districts. (*See* Doc. Nos. 77, 78).

Plaintiffs appealed and, on August 29, 2006, the Sixth Circuit reversed and remanded, concluding "that venue was properly laid in the Northern District of Ohio under both the LMRA and ERISA." *Moore v. Rohm & Haas, Co.*, 446 F.3d 643, 644 (6th Cir.2006). The Sixth Circuit "express[ed] no opinion on whether the district court was correct in its brief conclusion that plaintiffs' lawsuit constitutes 'several lawsuits ... improperly ... roll[ed] into one.'" *Id.* at 647. It further stated:

On this record, we are unable to ascertain whether the conduct alleged by the

of employee welfare benefits"); *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 606–07 (7th Cir.1993) (stating courts should "presume that a collective bargaining agreement ceases to obligate the employer when the agreement's term ... is up"); *Stewart v. KHD Deutz of America, Corp.*, 980 F.2d 698, 702 n. 3 (11th Cir.1993) (declining to resort to any inference to decide whether ambiguity existed); *United Paperworkers Internat'l Union AFL–CIO, CLC v. Champion Internat'l Corp.*, 908 F.2d 1252, 1261 n. 12 (5th Cir.1990) (rejecting *Yard–Man*, "[t]o the extent that [it] held that there is, as a general proposition, an inference of an intent to vest retirement benefits"); *Anderson v. Alpha Portland Industries, Inc.*, 836 F.2d 1512, 1517 (8th Cir.1988) ("we disagree with *Yard–Man* to the extent that it recognizes an inference of an intent to vest").

This inter-circuit split has led another branch of this court, correctly in the undersigned's view, to decline certification of a nationwide class in a case with facts similar to the instant case. *See, Wotus v. GenCorp, Inc.*, Case No. 5:00cv2604, Memorandum of Opinion and Order, Doc. No. 126, at 21–23 (Dec. 3, 2003).

2. In recent years, this has been a technique used by plaintiffs to avoid paying filing fees for multiple cases. For example, it is used by trustees of various ERISA plans when suing unrelated entities for failure to make required contributions to the plan. It has also been used by cable companies suing isolated individuals for unrelated incidents of cable piracy. Although this may be cost-efficient for the plaintiff in such a case, it is not a technique which can be easily overlooked by the court as an institution or by any individual judge, given that funding and staffing is based on case load. As a result, the Court is always on the lookout for the possibility that plaintiffs are trying to "economize" by filing one lawsuit rather than several. When that technique is detected, the Court requires the filing of separate lawsuits and, where appropriate, permits all of those suits to be assigned to a single judge, who may consolidate them for pre-trial (and sometimes trial) purposes. This allows truly related cases to be handled efficiently without skewing the case statistics of the court or a judicial officer.

When the plaintiffs appealed in the instant case, they argued that, since defendants had not raised improper venue or lack of personal jurisdiction, these matters were waived. This, of course, does not acknowledge or address the Court's perfectly legitimate concerns.

plaintiffs "aris[es] out of the same ... series of transactions or occurrences," as required by Federal Rule of Civil Procedure 20(a) or, if not, whether the division and the possible transfer pursuant to § 1404(a) of the respective cases would be more appropriate. Furthermore, we cannot review the district court's weighing of the applicable factors in these determinations, because the record is devoid of the necessary analysis. Accordingly, we conclude that, based on the existing record, the district court also erred in its resolution of this issue. *Id.*

Following the remand, determined to create a record that would not be "devoid of the necessary analysis[,]" *id.*, the Court first directed the plaintiffs to re-plead their complaint by October 31, 2006, stating:

> ... This amended complaint must separate the claims of putative classes on a location-by-location basis and must name at least one representative plaintiff for each location. The amended complaint shall contain no boilerplate language; it shall contain no paragraphs incorporating any other paragraphs by reference; it shall plead separate causes of action, each with its own supporting factual allegations.

(Doc. No. 94, at 2). A discovery cutoff of February 16, 2007 was set and a schedule for briefing the question of transfer under 28 U.S.C. § 1404(a) was arranged, to be at issue by April 6, 2007.

On October 31, 2006, plaintiffs filed their Second Amended Complaint. After defendants filed their Answer, plaintiffs moved for, and were granted, leave to file a Third Amended Complaint. (Doc. No. 113). Plaintiffs later filed a Fourth Amended Complaint. (Doc. No. 123).

The Court ordered the briefing that is now at issue with respect to the possible division and transfer of portions of the complaint.

## II. DISCUSSION

### A. Legal Standard

■ 28 U.S.C. § 1404(a) provides, in pertinent part:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

*Id.* The purpose of § 1404(a) is "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The district court has broad discretion in deciding whether or not to transfer under § 1404(a). *Phelps v. McClellan,* 30 F.3d 658, 663 (6th Cir.1994). The relevant factors are: (1) convenience of the parties, (2) convenience of the witnesses, (3) the interests of justice, and (4) whether the civil action might have been brought in the district to which the movant requests a transfer. *Central States, Southeast & Southwest Areas Health and Welfare Fund v. Guarantee Trust Life Ins. Co.,* 8 F.Supp.2d 1008, 1011 (N.D.Ohio 1998). When considering a § 1404(a) transfer, great weight is given to the plaintiff's selection of forum. *Mead Corp. v. Boldt Constr. Co.,* 508 F.Supp. 193 (S.D.Ohio 1981).

Fed.R.Civ.P. 20(a) provides for the permissive joinder of plaintiffs "if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences *and* if any question of law or fact common to all these persons will arise in the action." (emphasis added). As noted in 7 Wright, Miller, & Kane, FEDERAL PRACTICE AND PROCEDURE (Civil 3d) § 1652:

Subdivision (a) simply establishes a procedure under which the demands of several parties arising out of the same litigable event may be tried together, thereby avoiding the unnecessary loss of time and money to the court and the parties that the duplicate presentation of evidence relating to facts common to more than one demand for relief would entail. Thus, the rule permits the joinder of persons whose presence is procedurally convenient but is not regarded as essential to the court's complete disposition of any particular claim.

Rule 20 is merely a procedural device and does not alter the substantive rights of the parties. Consequently, rights that are separate and distinct under the governing law are not transformed into joint rights when plaintiffs join under Rule 20 in a federal court action; each plaintiff's right of action remains distinct, as if it had been brought separately. (internal citations omitted).

### B. Application

The Fourth Amended Complaint sets forth eighteen (18) causes of action, that is, two counts for each of the nine plant locations. The following chart illustrates the counts, plant locations, parties, and unions involved:

| Plant Location (Circuit) (Counts) | Named Plaintiffs (State of Residence) | Unions |
|---|---|---|
| Rittman, OH (6th Circuit) (I–LMRA) (II–ERISA) | Moses Moore (OH) Max Dean, dec'd (OH)* Russell Crall (OH) *by Doris Dean | United Steelworkers of America ("USWA") Local No. 12081 |
| Hutchinson, KS (10th Circuit) (III–LMRA) (IV–ERISA) | Donald Robinson (KS) Donald E. Cook, Sr. (KS) | USWA Local No. 12606 |
| Marysville, MI (6th Circuit) (VI–LMRA) (VI–ERISA) | Donald J. McColman (MI) | USWA Local No. 12778 |
| Fairport, OH (6th Circuit) (VII–LMRA) (VIII–ERISA) | James Hall, Jr., dec'd (OH)* Ross J. Satterfield (OH) Bart J. Kochis (OH) *by Martha Hall | The Paper Allied– Industrial, Chemical & Energy Workers International Union ("PACE") Local No. 5–966 |
| Manistee, MI (6th Circuit) (IX–LMRA) (X–ERISA) | Leonard Bialik, dec'd (MI)* *by Laura Bialik | PACE Local No. 6–667 |
| Silver Springs, NY (2d Circuit) (XI–LMRA) (XII–ERISA) | Thomas Alfieri (NY) | PACE Local No. 1–625 |
| Elk Grove, IL (7th Circuit) (XIII–LMRA) (XIV–ERISA) | Thomas E. Jones, dec'd (IL)* *by Amelia E. Jones | PACE Local No. 7–507 |
| Grand Saline, TX (5th Circuit) (XV–LMRA) (XVI–ERISA) | Billy W. Smith (TX) James E. Williams (TX) | International Chemical Workers Unions Council of the United Food & Commercial Workers Union ("ICWUC") Local |

No. 3C

Weeks Island, LA          Ernest Jeanminette (LA)          ICWUC Local No. 29C
(5th Circuit)             Charles Henderson (LA)
(XVII–LMRA)
(XVIII–ERISA)

Of the nine plants represented in this lawsuit, four are within the jurisdictional boundaries of the Sixth Circuit (Rittman, OH; Marysville, MI; Fairport, OH; Manistee, MI). At two of these plants (Rittman, OH and Marysville, MI), USWA local unions bargained on behalf of the workers; at the other two (Fairport, OH and Manistee, MI), PACE local unions bargained on behalf of the workers. The workers at these four plants would enjoy the *Yard–Man* inference.

Of the remaining five plants, one is in Kansas (Tenth Circuit) with workers represented by USWA; one is in New York (Second Circuit) with workers represented by PACE; one is in Illinois (Seventh Circuit) with workers represented by PACE; one is in Texas (Fifth Circuit) with workers represented by ICWUC; and the last is in Louisiana (Fifth Circuit) with workers represented by ICWUC.

The Fifth and Seventh Circuits have rejected the *Yard–Man* inference. *See United Paperworkers Internat'l Union AFL–CIO, CLC v. Champion Internat'l Corp.*, 908 F.2d 1252, 1261 n. 12 (5th Cir. 1990) (finding "no basis in logic or federal labor policy for such a broad inference"); *Senn v. United Dominion Indus., Inc.*, 951 F.2d 806, 816 (7th Cir.1992) ("silence and the explicit repudiation of any possible basis for a lifetime benefits claim in the [relevant CBA] as well as the [plan documents] referenced therein demonstrate that the signatories to the contract did not intend that a lifetime right to welfare benefits would vest in retirees").

The Second and Tenth Circuits do not seem to have outrightly rejected the inference, but have also not really ruled on it directly. *See, e.g., American Federation of Grain Millers, AFL–CIO v. International Multifoods, Corp.*, 116 F.3d 976, 980 n. 3 (2d Cir.1997) ("[b]ecause we conclude below that there is no need for a trial as the documents at issue in this case could not reasonably be interpreted as promising vested retiree benefits, we need not decide what presumption, if any, would be appropriate at trial."); *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1515 (10th Cir.1996) (distinguishing *Yard-Man* on the facts and concluding that "[q]uestions involving the scope of benefits provided by a plan to its participants must be answered initially by the plan documents, applying the principles of contract interpretation").

The Sixth Circuit has recently admonished courts against overstating the significance of the *"Yard–Man* inference":

... El Paso and CNH America misinterpret the term "inference" and confuse it with a legal presumption. Under *Yard–Man* we may infer an intent to vest from the context and already sufficient evidence of such intent. Absent such other evidence, we do not start our analysis presuming anything. If *Yard–Man* required a presumption, the burden of rebutting that presumption would fall on the defendants. However, under *Yard–Man*, "[t]here is no legal presumption that benefits vest and that the burden of proof rests on plaintiffs." *Maurer*, 212 F.3d at 917. This Court has never inferred an intent to vest benefits in the absence of either explicit contractual language or extrinsic evidence indicating such an intent. Rather, the inference functions more to provide a contextual understanding about the nature of labor-management negotiations over retirement benefits. That

is, because retirement health care benefits are not mandatory or required to be included in an agreement, and because they are "typically understood as a form of delayed compensation or reward for past services" it is unlikely that they would be "left to the contingencies of future negotiations." *Yard–Man*, 716 F.2d at 1481–82 (citations omitted). When other contextual factors so indicate, *Yard–Man* simply provides another inference of intent. All that *Yard–Man* and subsequent cases instruct is that the Court should apply ordinary principles of contract interpretation.

*Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571, 579–80 (6th Cir.2006).

■ Although the Court believes it would have very good reasons for transferring Counts III and IV to the United States District Court for the District of Kansas, Counts XI and XII to the Western District of New York, Counts XIII and XIV to the Northern District of Illinois, Counts XV and XVI to the Eastern District of Texas, and Counts XVII and XVIII to the Western District of Louisiana, in view of the fact that the Court not the defendants initially raised the Section 1404 transfer issue, and given both the length of time that has already been expending (preventing a resolution for the parties) *and* the caution of the *Yolton* case, the Court is of the view that it should retain this entire action and simply decide the issues on the merits.[3]

There has not yet been a motion to certify a class and, fair warning to the parties, the Court is currently not inclined to believe the requirements of Rule 23 can be met. *See, Wotus v. GenCorp, Inc.*,

Case No. 5:00CV2604 (N.D.Ohio Dec. 3, 2003) (denying class certification), *interlocutory appeal denied*, No. 04–301 (6th Cir. Aug. 18, 2004). However, if a class is ultimately not certified, the Court is certainly able to apply the law of not only the Sixth Circuit, but also the Second, Fifth, Seventh, and Tenth Circuits and, therefore, need not transfer portions of this case to district courts within these circuits.

### III. CONCLUSION

The Court concludes, for the reasons stated above, that it should retain jurisdiction over this entire case.

### IV. SUBSEQUENT PROCEEDINGS

As previously indicated in the Court's Order of April 27, 2007 (Doc. No. 116), the Court anticipates the filing of a motion for class certification and, later, motion(s) for summary judgment. The April 27 Order set general guidelines for these motions, directing a motion for class certification within one week of this ruling and directing motions for summary judgment within one month of a ruling on class certification. However, the parties have filed a joint motion to extend all deadlines by one additional month. (Doc. No. 138). The reason given is the need to depose a new party plaintiff, Russell Crall, who is recovering in a nursing home from a hip injury.

Mr. Crall was added to the case via the Fourth Amended Complaint, purportedly as a result of this Court's April 27th request that plaintiff's counsel make certain that there are plaintiffs to represent every possible class and subclass. *See* Doc. No.

---

**3.** The defendants, in their brief requested by the Court, raise Rule 20 misjoinder as an argument. However, since there can now be no doubt that this Court has jurisdiction over all the plaintiffs and all the defendants, any misjoinder is harmless. If there is misjoinder and if a nationwide class is not certified, the only consequence is that the undersigned will get statistical credit for having resolved only *one* case that probably should have been *six* cases.

116, p. 3, n. 2. However, when the Fourth Amended Complaint was filed, there was nothing to suggest a reason for adding Mr. Crall. The Rittman, OH plant where he worked was already adequately represented by two named plaintiffs, Moore and Dean. Mr. Crall seems superfluous; he does not add anything but another party to this lawsuit. Nonetheless, given all the delay already suffered in this case, since it will be impossible to schedule the trial of this case during this calendar year, the Court will grant Doc. No. 138.

The following schedule will now control:

1. September 5, 2007 — Motion for class certification due
2. September 19, 2007 — Defendants' response to motion for class certification due
3. September 26, 2007 — Plaintiffs' reply regarding class certification due
4. October 31, 2007 — Deadline for the Court's ruling on class certification motion
5. November 30, 2007 — Motions for summary judgment due (or written statements by each party that none will be filed)
6. December 21, 2007 — Responses to motions for summary judgment due
7. January 4, 2008 — Replies regarding summary judgment motions due

In the event the Court is advised on November 30, 2007 that no summary judgment motions will be filed, the Court will immediately schedule a status conference to discuss subsequent proceedings.

IT IS SO ORDERED.